MARJORIE J. KANE, APPELLANT, v. UNITED CATHOLIC SOCIAL SERVICES OF OMAHA, INC., APPELLEE.

191 N. W. 2d 824

Filed November 19, 1971. No. 37962.

S. J. Albracht and Michael P. Cavel of Lathrop, Albracht & Dolan, for appellant.

John H. Kellogg, Jr., of Hotz, Byam & Kellogg, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

The relator filed in the district court an application for writ of habeas corpus testing the right of the respondent to the custody of and its right to consent to the adoption of the infant son of the relator. The relator, age 22, is the natural mother of the child who was born out of wedlock October 11, 1970. The respondent is a licensed child placement agency under the statutes of the State of Nebraska. On October 21, 1970, the mother executed a relinquishment under the provisions of section 43-106.01, R. R. S. 1943, and delivered custody of the child to the agency. The agency at that time in writing accepted responsibility for the child as required by statute.

The application alleges that relator signed papers without knowing their contents and that the child is being unlawfully held by the agency. There is no real dispute in the evidence. The relator's own testimony, as well as that of the other witnesses, clearly and without dispute shows that she knew the contents and the nature and effect of the relinquishment which she executed at the time she delivered custody of the baby to the agency. The relinquishment in form satisfies the statutory requirements and the evidence shows that it was acknowledged and witnessed in conformity with the statute.

The mother's position, as stated by her attorney during the trial, is that the relinquishment is the fruit of "economic coercion and economic duress" and therefore should not bind her. She acknowledges that no representative of the agency exercised any duress or coercion of any kind or degree to induce her to execute the relinquishment.

The evidence shows that the mother was gainfully

employed until about 3 months before the child's birth when she took a leave of absence from her employment; that her employment was open to her after the birth of her child; that she had an apartment of her own; and, before the child's birth, determined that she would keep the baby and to that end had acquired certain equipment and had made arrangements for someone to care for the child when she returned to work. These plans, the evidence shows, were frustrated because of the exhaustion of her financial resources and because the child's birth resulted in complications which required her to remain away from her employment and to be under a doctor's care for 2 weeks after her release from the hospital. The relator and her baby stayed at the home of relator's parents after she and the baby were discharged from the hospital and up to the time of the execution of the relinquishment. The evidence shows that the relator's parents, particularly her mother, wanted her to relinquish the child for adoption and made known their desires to her, and that the relator's mother made the initial contact with the agency.

In the two discussions which the relator had with agency representatives, one before signing the relinquishment and one at the time of the execution of the relinquishment, the matter of the relator's finances was not discussed. She did not ask for or receive any advice on possible sources of financial aid which might have enabled her to keep the child. At the trial when asked why she gave the child up, she stated: "Because I didn't have any money to take care of him or food or anything." And in reply to the question, ". . . did you see any possibility of feeding the child and caring for the child yourself?" she answered: "No. I didn't know what else to do. . . ." On cross-examination she stated: "I didn't have any other choice."

The relator contends that the respondent had a duty to make inquiry concerning her economic circumstances and to suggest to her ways and means which would have

enabled her to keep the baby. The law places on the placement agency no such obligation.

The second day after the execution of the relinquishment, upon learning from a friend that she could obtain financial assistance and child support from the Department of Welfare, she called the agency and told them she wanted the baby back. The agency did not return the baby although there apparently was some discussion concerning this, the nature of which is not disclosed by the record.

Section 43-106.01, R. R. S. 1943, provides in part as follows: "When a child shall have been relinquished by written instrument, as provided by sections 43-104 and 43-106, . . . to a licensed child placement agency and the agency has, in writing, accepted full responsibility for the child, the person so relinquishing shall be relieved of all parental duties toward and all responsibilities for such child *and have no rights over such child.*" (Emphasis supplied.) This case is governed by the statute and Batt v. Nebraska Children's Home Society, 185 Neb. 124, 174 N. W. 2d 88. The relinquishment if voluntary, as it is here, is not revocable. Stresses, motivations, and circumstances such as are outlined by the evidence are probably present in many cases such as this. Much as we are moved by the mother's evident desire for her child and the unfortunate circumstances which motivated her decision to sign the relinquishment, we have no choice but to affirm the judgment.

AFFIRMED.