Kassandra Aimee Kellie, a minor child, ex rel.
her parents and next friends,
Kathleen Ann Kellie and Alan Shields,
appellant, v.
Lutheran Family and Social Service of
Nebraska, Inc., appellee.

305 N.W.2d 874

Filed May 15, 1981.  No. 43248.

Nelson & Morris for appellant.

James B. Cavanagh of Erickson, Sederstrom, Leigh, Johnson, Koukol & Fortune, P.C., for appellee.

Heard before Krivosha, C.J., Boslaugh, McCown, Clinton, Brodkey, and Hastings, JJ.

McCown, J.

In this habeas corpus case the unmarried parents of a minor child sought to regain custody of the minor child from a licensed child placement agency. The District Court denied the writ and the parents have appealed.

Kassandra Kellie is the daughter of the relators, Kathleen Ann Kellie and Alan Shields. She was born on September 24, 1973. Her parents were then and are now unmarried. The mother, Kathleen, counseled with a social worker of the respondent, Lutheran Family and Social Service of Nebraska, Inc., at the

time Kassandra was born and ultimately decided to raise the child as a single parent.

On May 10, 1974, the District Court for Lancaster County entered a decree ordering Alan Shields to pay $90 per month child support for Kassandra and giving him reasonable rights of visitation. Kathleen maintained custody of the child from her birth until late in 1978 when the events material to this controversy arose.

During the early years of Kassandra's life Alan paid the child support required but visited his daughter only a few times. Beginning in June 1978 he voluntarily increased his child support payments to $200 per month and began visiting Kassandra much more frequently in an effort to establish a closer relationship with his daughter since he was then working in Lincoln.

Kathleen has occasionally had psychiatric treatment for depression. In the fall of 1978 she began to feel that she was not providing a suitable home for Kassandra and that her daughter would be better off if she lived in a home with both a mother and a father.

On November 2, 1978, Kathleen telephoned Steven Bryant, a social worker at the Lincoln office of Lutheran Family Service, who had previously given her advice, and told him she wanted to discuss the possibility of placing Kassandra for adoption. On November 6, 1978, she met with Bryant at his office, told him that she felt incapable of caring for the child and that someone else might do a better job, and on November 8 she reviewed the files of prospective adoptive families. She selected a tentative adoptive family, Larry and Patricia Randolph, who lived in Bridgeport, Nebraska, and asked to meet them.

On November 11, 1978, a meeting took place at Bryant's office between Kathleen and the Randolphs. Bryant and the Randolphs' son were also present. Adoption and adoption procedures were discussed. On November 17, 1978, the Randolphs returned to

Lincoln with their young son and Kathleen and Kassandra went to dinner with them. The next morning, November 18, 1978, the Randolphs returned and took Kassandra out for a drive because Kathleen felt she needed to know Kassandra's reaction to the Randolphs when her mother was not present. The Randolphs returned about noon with Kassandra.

Kathleen and Kassandra went to Bryant's office on the afternoon of Saturday, November 18, 1978. At that time Kathleen began to express some uncertainty about her own feelings. Bryant told her that she was going to have to make a decision as to the Randolphs as an adoptive family on that day and Kathleen then decided to place the child for adoption.

Bryant explained the nature of the relinquishment and told Kathleen that the relinquishment was irrevocable. Kathleen then signed the relinquishment and consent to adoption. The acceptance of the relinquishment was not signed. The child was delivered to Lutheran Family and Social Service of Nebraska, Inc., and later placed with the Randolphs.

The father, Alan Shields, never talked to Bryant or anyone else from Lutheran Family Service. Bryant knew that Shields was Kassandra's father and told Kathleen that he wanted a relinquishment from Shields but no relinquishment from Shields was ever obtained.

Three days after signing the relinquishment Kathleen called Bryant and told him that she had made a mistake and wanted Kassandra back. Bryant advised her that she could not get Kassandra back. Kathleen called Bryant again on Thanksgiving Day and went to Bryant's office twice thereafter trying to obtain Kassandra's return. On December 26, 1978, Kathleen telephoned the Randolphs and asked them to voluntarily return Kassandra and they refused.

On December 27, 1978, Kathleen personally delivered a written and notarized revocation of relinquishment to Lutheran Family and Social Service

of Nebraska, Inc., at their Lincoln office. At that time Kathleen asked to see the relinquishment and requested a copy. At that time neither copy of the relinquishment had been signed by Lutheran Family and Social Service of Nebraska, Inc. The parties have stipulated that the acceptance of the relinquishment was not signed by Lutheran Family and Social Service of Nebraska, Inc., until January 12, 1979.

On January 2, 1979, the natural parents filed this action to regain custody of Kassandra. Alan testified that he desired Kathleen to have sole physical custody of the child, but that if she failed to obtain custody he desired custody himself. At the conclusion of the trial the District Court found that Kathleen freely and voluntarily signed the relinquishment but had revoked it prior to acceptance by the respondent and that Kathleen and the Randolphs were all fit and proper persons to have custody of the child. The court also found that because Kathleen had set in motion the events which resulted in the legal proceedings by executing the relinquishment, she had forfeited her superior parental rights and that it was in the best interests of the child to remain with the Randolphs. The court made no finding as to the parental rights or fitness of Alan Shields. The District Court then denied the petition for a writ of habeas corpus and this appeal followed.

The critical section of the Nebraska adoption statutes involved here is Neb. Rev. Stat. § 43-106.01 (Reissue 1978). That section provides in part: "When a child shall have been relinquished by written instrument, as provided by sections 43-104 and 43-106, to the Department of Public Welfare or to a licensed child placement agency and the agency has, in writing, accepted full responsibility for the child, the person so relinquishing shall be relieved of all parental duties toward and all responsibilities for such child and have no rights over such child."

In the case at bar Lutheran Family Service has two executive directors and only an executive director is authorized to sign the acceptance of a relinquishment. No one signed the acceptance here on behalf of Lutheran Family Service until January 12, 1979, approximately 2 weeks after the relinquishment had been revoked by Kathleen and more than a week after this action had been commenced.

Lutheran takes the position that the statutory requirement of written acceptance is only a technical requirement and that they accepted in fact when they accepted the child at the time the relinquishment was signed.

Courts have traditionally required substantial if not strict compliance with all statutory requirements with respect to the formalities of execution of a parent's consent to adoption or relinquishment of parental rights. A consent or relinquishment which fails to meet statutory requirements cannot be given legal effect. See 2 Am. Jur. *Adoption* § 43 (1962). In this state we have followed the rule that strict compliance with the adoption statutes is required. In *McCauley v. Stewart*, 177 Neb. 759, 131 N.W.2d 174 (1964), this court affirmed the vacation of an adoption decree previously entered in the county court on the ground that the signatures on the relinquishments had not been acknowledged before a notary public at the time the relinquishments were signed. The matter of adoption is statutory, and the manner of procedure and terms are all specifically prescribed and must be followed. *In re Petition of Ritchie*, 155 Neb. 824, 53 N.W.2d 753 (1952).

This court has noted that a licensed child placement agency is required to accept responsibility for the child, in writing, under § 43-106.01. See *Kane v. United Catholic Social Services*, 187 Neb. 467, 191 N.W.2d 824 (1971).

The respondent contends that to require strict compliance with the statute will place an undue burden

upon a licensed child placement agency and create uncertainty during the time period between execution of a relinquishment and its acceptance. We disagree. Arrangements for prompt and strict compliance with the statute can obviously be made by proper administrative procedures.

A duly executed revocation of a relinquishment and consent to adoption delivered to a licensed child placement agency within a reasonable time after execution of the relinquishment and before the agency has, in writing, accepted full responsibility for the child, as required by statute, is effective to invalidate the original relinquishment and consent. Basic principles of offer and acceptance, as well as the statute, dictate that result. In the present case Kathleen attempted to revoke within 3 days after execution of the relinquishment, continued her efforts repeatedly, and delivered the duly executed revocation less than 6 weeks after the original relinquishment was signed. Under the circumstances here it was within a reasonable time.

In the case at bar the District Court quite properly found that Kathleen had the right to revoke the relinquishment and consent to adoption and that she revoked it before Lutheran had accepted, in writing, full responsibility for the child. That determination was also determinative of the habeas corpus proceeding here. Under the rules set out in *McCauley*, once the invalidity of the relinquishment and consent to adoption was established, the fitness of the natural or prospective adoptive parents, and which of them could best provide for the child, was not in issue.

It should also be pointed out that since the very recent case of *Cox v. Hendricks, ante* p. 23, 302 N.W.2d 35 (1981), an unmarried father may well have parental rights. In this case it is clear that Alan Shields has neither waived nor relinquished any parental rights but, instead, has joined with Kathleen in the petition for writ of habeas corpus.

The petition of the relators for a writ of habeas corpus should have been granted and the legal custody of Kassandra should have been returned to Kathleen Kellie.

REVERSED AND REMANDED WITH DIRECTIONS TO ISSUE WRIT OF HABEAS CORPUS IN ACCORDANCE WITH THIS OPINION.

WHITE, J., participating on briefs.

BRODKEY, J., concurs in result.

HASTINGS, J., dissenting.

The result of the majority opinion ignores the fundamental question which is present in every habeas corpus case involving child custody. That is, what is in the best interests of the child.

The opinion relies heavily upon *McCauley v. Stewart*, 177 Neb. 759, 131 N.W.2d 174 (1964), a proceeding in an adoption case which involved a consent and relinquishment which was void because it had not been acknowledged. The trial court had held that the suitability of the natural parents to have custody of the child would not be an issue if the adoption were invalid and there had been no abandonment. Although this court held the decree of adoption was invalid, the judgment was modified and *that portion of the decree which awarded custody of the minor child to the natural parents was not affirmed.*

In *Gray v. Maxwell*, 206 Neb. 385, 293 N.W.2d 90 (1980), we determined that a relinquishment to a private party was invalid, but went further and held that under the circumstances there must be an independent determination of the fitness of the natural parent and that an award of custody was to be founded upon the best interests of the child.

The majority today has determined that the relinquishment to an agency, if found invalid, will be treated differently than an invalid relinquishment to a private party. The fate of a child should not be

subject to such a fine distinction. The cause should be remanded for a determination of custody based upon the best interests of the child.

BOSLAUGH, J., joins in this dissent.

WHITE, J., concurring.

While I concur in the result reached by the majority in this case, I do so on the basis of the plain wording of Neb. Rev. Stat. § 43-106.01 (Reissue 1978) which requires written acceptance of responsibility for the child by the agency as well as written relinquishment by the parent in order to result in loss of parental rights. The relinquishment document itself does not operate to terminate parental rights, and the Legislature itself has determined that any time prior to written acceptance by the agency constitutes a reasonable time within which to revoke a relinquishment in favor of an agency. However, the majority is attempting to second-guess the Legislature by its statement that, even in the absence of a signed acceptance by the agency, the parent has only a "reasonable time" within which to validly revoke a relinquishment document. This gratuitous injection of a separate "reasonable time" requirement for revocation is an act not within the power of this court, since "[i]t is not within the province of a court to read a meaning into a statute that is not warranted by legislative language. Neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute." *City of Lincoln v. Nebraska Liquor Control Commission, ante* p. 630, 634, 304 N.W.2d 922, 925 (1981).

KRIVOSHA, C.J., and CLINTON, J., join in this concurrence.