LYNETTE LUM, APPELLANT, V.
DENNIS MATTLEY ET AL., APPELLEES.

305 N.W.2d 878

Filed May 15, 1981. No. 43364.

Mary L. Zemyan of Western Nebraska Legal Services for appellant.

Paul D. Empson for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

Plaintiff, Lynette Lum, the natural mother of Ruby Nohelani Lum, a child born out of wedlock on November 21, 1979, brought an action in habeas corpus in the District Court for Box Butte County, Nebraska, alleging that a relinquishment signed January 15, 1980, in favor of Dennis R. and Virginia M. Mattley,

a married couple, was void because it was obtained by threats, coercion, and fraud and that the best interests of the child required that the plaintiff mother regain custody. Dennis R. and Virginia M. Mattley answered, admitting custody and denying all other allegations of the petition. The trial court found for the defendants. Plaintiff appeals.

Plaintiff assigns two errors: (1) That the trial court erred in determining that, while a natural mother may revoke her relinquishment and consent to adoption at any time prior to the adoption, the right is subject to the court's determination that the return of the custody to the natural mother is in the best interests of the child; and (2) That the trial court erred in not holding that a natural mother who has relinquished custody is entitled to return of the child's custody before adoption absent an affirmative finding of unfitness.

We note the absence of a bill of exceptions. Under our cases, where there is no bill of exceptions the court is limited to a sole question: whether the pleadings support the judgment of the trial court. *Pauley v. Scheer*, 168 Neb. 343, 95 N.W.2d 672 (1959); *Bednar v. Bednar*, 146 Neb. 726, 21 N.W.2d 438 (1946).

The trial court in its findings held that the relinquishment was voluntary and that plaintiff was neither coerced nor subjected to duress. The plaintiff does not question those findings here and they will not be further discussed.

Implicit in the question of whether the pleadings support the findings of the court is the determination of the extent of the right, if any, of a parent, after a valid relinquishment to a private person has been executed and custody delivered, to revoke the relinquishment and compel the delivery of the child.

The District Court here found that the relinquishment signed by plaintiff was made knowingly, intelligently, and voluntarily, without threats, coercion, fraud, or duress. In addition, the relinquish-

ment form appears to be valid on its face. Thus, we find that the relinquishment of parental rights and consent to adoption form signed by plaintiff is valid.

Under Nebraska law, our focus now shifts to the best interests of the child in determining the right to custody. The rule in Nebraska is that a natural parent "can, by agreement, surrender the custody of his infant children to another, so as to make the custody of that other legal, and he cannot thereafter repudiate such agreement and retain the custody of the children, unless he can show a clear breach of the agreement, or an abuse of the child, or that the best interest of the child requires it." *State v. Nebraska Children's Home Society*, 94 Neb. 255, 263, 143 N.W. 203, 206 (1913). In the wake of a valid relinquishment, then, it is incumbent upon the petitioner to show that the best interests of the child *require* that it be returned to her custody.

We are convinced that this is the proper rule to follow in cases such as the present one. In *Contreras v. Alsidez*, 200 Neb. 773, 775, 265 N.W.2d 452, 453 (1978), a habeas corpus action in which there had been no voluntary relinquishment of parental rights, we noted that: "'When a controversy arises as to the custody of a minor child between a parent and a third person, the custody of the child is to be determined by the best interests of the child with due regard for the superior rights, as between the parties, of a fit, proper, and suitable parent.'"

However, by the terms of the valid relinquishment in the present case, petitioner has voluntarily terminated her own parental rights, including "the superior rights . . . of a fit, proper, and suitable parent." Thus, petitioner's parental rights are no longer in issue here and the parties now stand on an equal footing with respect to determining custody. The rule of *State v. Nebraska Children's Home Society, supra,* properly shifts our focus now to the best interests of the child. The party demanding that custody be

changed naturally must bear the burden of affirmatively demonstrating that "the best interests of the child require" that she regain custody.

The rule's focus on the child's best interests recognizes that it is the child who will bear the brunt of the impact of revoking a valid relinquishment, by being uprooted and shifted from home to home. To focus instead upon any "right" of a relinquishing parent to change her mind would ignore the fact that parental rights are no longer an issue after a valid relinquishment and would further abrogate our responsibility to the best interests of the child. Even parental rights which are fully intact are not inalienable because of the "paramount interest" of society in the protection of the child's best interests. *State v. Duran*, 204 Neb. 546, 554, 283 N.W.2d 382, 387 (1979). Where, as here, parental rights are no longer at issue, the best interests of the child can be our only concern in determination of custody. Thus, the trial court was correct in requiring that petitioner make an affirmative showing that the child's best interests require her return to petitioner, and the assignments of error are without merit.

The trial court made detailed findings with respect to the best interests of the child requiring custody to remain with the prospective adoptive parents. In the absence of a bill of exceptions, those findings must be taken as correct.

The determination by the District Court in this habeas corpus case does not in any fashion control the proper exercise of the jurisdiction of the county court in the adoption proceeding itself.

The judgment of the District Court in this habeas corpus action is affirmed.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I find that I must dissent from the majority in this case. We have today decided the case of *Kellie v.*

*Lutheran Family & Social Services, ante* p. 767, 305 N.W.2d 874 (1981). In the *Kellie* case we held that if the adoption involved a licensed agency a natural parent could revoke an earlier executed relinquishment of her child if done before the adopting agency had accepted full responsibility for the child as required by statute. In doing so, we said at 772, 305 N.W.2d at 877: "Basic principles of offer and acceptance, as well as the statute, dictate that result."

In the instant case, we have now, in effect, held that while what we said in *Kellie* may be true with regard to a licensed agency, the situation with regard to a private placement is otherwise. I think the distinction is not valid.

The obvious intent of the statute with regard to the licensed agency is to ensure that the licensed agency accepts the responsibility of caring for the child once the child's custody is taken by the agency. Even if the agency is unable to find an appropriate home and adoptive parents for the child, it will remain responsible for the child.

Why do we require something less when dealing with a private adoption? If, as the majority in *Kellie* has suggested, principles of contract such as "offer and acceptance" apply, then why should we not also impose principles of contract such as "mutuality"? Under the majority view in this case, if the proposed adoptive parents change their minds prior to the time that the county court enters an order approving the adoption, the proposed parents incur no liability or responsibility and, at their option, may either return the child to the natural parent or turn the child over to the state as a child without parent or home. How can the natural parent, on the one hand, be bound while the adoptive parent, on the other, is without any binding obligation? I would hold that the natural parent in a private placement has the right to withdraw the relinquishment until the county court has approved the adoption and made the adop-

tive parents responsible for the child. I am not unmindful of the fact that this would introduce a measure of uncertainty into the private placement as opposed to the certainty of the licensed agency. That, in and of itself, may not be such a bad result for either the natural parents who are giving up their child or the child itself, both of whom should be assured that under any circumstance the person or entity selected by the natural parents will remain legally responsible for the child until another person or entity is approved by the county court. I would have found for the appellant and held that the attempt to revoke the relinquishment was effective.