IN RE ADOPTION OF C.L.R. AND J.M.R., CHILDREN UNDER 18 YEARS OF AGE.
D.E.M., ADOPTIVE FATHER, APPELLANT, V. P.A.M., NATURAL MOTHER, APPELLEE.

352 N.W.2d 916

Filed August 10, 1984.   Nos. 83-957, 83-958.

Edward F. Carter, Jr., of Barney, Carter & Johnson, P.C., and Cleo Robak, for appellant D.E.M.

Gary L. Erlewine, for natural father L.W.R.

Daniel A. Fullner of Moyer, Moyer, Egley & Fullner, for appellee.

Robert R. Steinke of Allphin & Steinke, guardian ad litem for C.L.R. and J.M.R.

Krivosha, C.J., Boslaugh, White, Hastings, Shanahan, and Grant, JJ., and Colwell, D.J., Retired.

Hastings, J.

These two cases were consolidated for trial in the courts below and for briefing and argument here. They involve appeals of proceedings in which it was sought to vacate and set aside decrees of adoption.

The natural mother (mother) and natural father (father) were husband and wife to whom the minor children involved were born in 1975 and 1977. Their marriage was dissolved by decree of the district court for Colfax County on October 7, 1977. Custody of the children was given to the mother, and the father was ordered to pay support.

The mother and adoptive father were married on July 12, 1980. On January 20, 1981, petitions were filed in the county court for Platte County, seeking the adoption of the children by the adoptive father. Decrees granting such request were entered on February 18, 1981.

A petition seeking dissolution of the marriage between the mother and adoptive father was filed by the mother in the district court for Platte County on October 5, 1981. The adoptive father was ordered to pay temporary child support. The record does not disclose any final decree.

On January 26, 1982, petitions were filed by the adoptive father in the county court for Platte County, seeking to vacate and set aside the adoptions. The petitions and amended petitions alleged fraud on the part of the mother in that she procured the adoptive father's consent to adoption for the sole purpose of obtaining a father who would support the children, inasmuch as the natural father refused to do so; the absence of a proper order from the district court for Colfax County consenting to such adoptions; and that consent to adoption was obtained from the natural father through fraud, duress, and the payment of an improper consideration.

The father voluntarily became a party to these proceedings. He joined in the request for relief advanced by the adoptive father, alleging that his consent to adoption was obtained by granting him improper consideration, to wit, the release of past

and future obligation to pay child support and the promise of the release of a bench warrant outstanding for his arrest for nonpayment of child support.

The county court denied the prayer of relief of the adoptive father. However, it did find that the father's consent to adoption was obtained by fraud and duress in that the mother and adoptive father represented to him at the time he signed the consent that they were married and that the outstanding bench warrant placed his employment in jeopardy and threatened his freedom. Accordingly, the court vacated the decrees of adoption and restored the rights and obligations of the father as a parent.

On appeal the district court affirmed the action in denying the adoptive father relief, but reversed the action of the county court in granting relief to the father and vacating the adoptions. The adoptive father appeals to this court. The father, although not having filed a notice of appeal, has filed a brief in these proceedings supporting the position of the appellant. The guardian ad litem has also filed a brief urging affirmance of the judgment of the district court.

Appeals in adoption proceedings are reviewed by the district court and this court for error appearing in the record. Neb. Rev. Stat. §§ 43-112 (Reissue 1978) and 30-1601 and 24-541.06 (Cum. Supp. 1982). Accordingly, we may dispose of the adoptive father's claim, that he was induced by fraud to enter into these adoptions, with a minimum of comment.

There is an abundance of evidence in the record to support the findings of both lower courts that the adoptive father entered into these adoptions freely and voluntarily, that he understood the nature of the relationship to be created, that he loved the children and wanted to be their parent, and that adoption was his idea more than it was that of the mother. He had no more right to deny the obligations of parenthood under these circumstances than would a natural father who claimed to have been defrauded into fathering a child by a wife who was more interested in becoming a mother than continuing as a wife.

The county court's finding of misrepresentation as to the marital status of the mother and adoptive father at the time the

father executed the consent and relinquishment was totally without substance. Although we are not prepared to say that we would condone adoptions by unmarried couples, we are not cited to any law prohibiting the same. More importantly, however, the relinquishment did not become effective until the adoption proceedings were commenced, which was some 7 months after the marriage of the parties.

Three assignments of error remain to be discussed: payment of improper consideration, coercion in the form of the bench warrant, and the absence of consent by the district court.

At the time the father signed the relinquishment and consent to adoption he was nearly $3,000 in arrears on the payment of child support. There is no question but that the mother and adoptive father executed a release of all child support obligations on the father's part, accrued or to accrue in the future, conditioned on the father's execution of the relinquishment. This document was filed in the dissolution proceedings in the district court for Colfax County. It is insisted that this is an impermissible payment of consideration sufficient to void the consent, as determined in *Gray v. Maxwell*, 206 Neb. 385, 293 N.W.2d 90 (1980).

We would be blind to reality if we did not acknowledge that in most adoptions of this nature the relinquishing father is "paid a consideration" in that he will, at the very least, be relieved of the obligation of future support. This is the very nature of adoption proceedings. "[A]fter a decree of adoption has been entered, the natural parents . . . shall be relieved of all parental duties toward and all responsibilities for such child . . . ." Neb. Rev. Stat. § 43-111 (Reissue 1978). Furthermore, it is a rare case indeed where a mother will attempt to obtain, or, more especially, that a father will willingly give, a relinquishment for adoption when he has faithfully and continually met his regular support obligations. We therefore hold that the satisfactions and discharges of accrued child support obligations, or the termination of future responsibility for the same, do not constitute an unwarranted payment of consideration which will vitiate a child relinquishment.

Similar reasoning obviates the father's claim of coercion. In support of his contention the father testified that at one time he

was nearly $3,000 in arrears on his child support payments; a deputy sheriff came to his place of employment and served some papers on him; he called Larry Karel, the attorney representing his former wife in the adoption proceedings, and expressed his concern that he might lose his job if he were arrested; Karel repeated what he had written the father, that he would be released from child support if he consented to the adoption; and the father told Karel that he knew the adoptive father, that he believed he would be a good father for his children, that he had no real objection to his adopting the children, and that he would sign the relinquishment if the bench warrant was recalled.

There is no evidence in the record that the mother took any steps to initiate the contempt proceedings against the father. As a matter of fact, she categorically denied that. The record in the district court transcript of the case involving the natural parents' dissolution proceedings discloses that J. H. Hoppe, who was appointed as a special attorney to prosecute contempt proceedings against the father for nonsupport, was responsible for having the bench warrant issued. It is true, and unfortunate, that he and the mother and adoptive father's attorney, Karel, held themselves out as being associated in the practice of law. However, there is no direct evidence that the two attorneys acted in concert to obtain the father's relinquishment and consent. Hoppe, in commencing contempt proceedings, apparently was discharging his duties imposed by statute and the court. Neb. Rev. Stat. § 42-358 (Reissue 1978) provides for the appointment of an attorney by the court to initiate contempt proceedings for the collection of delinquent child support payments.

There was no credible evidence that the contempt proceedings were instituted other than as required by law nor done in an effort to coerce the father's execution of the relinquishment. It was the father who deliberately placed himself in the position of being subject to contempt proceedings by not discharging his legal obligation for support, and it was he himself who proposed the dismissal of the contempt proceedings in return for his cooperation in the adoption proceedings.

After having enjoyed the "fruits of his bargain," we will not now permit a natural father, for all intents and purposes a total stranger to his children, who refused to live up to his parental obligations by way of either financial support or moral comfort and encouragement, to come forward some 31 months later and disrupt and upset an accomplished adoption.

Finally, it is suggested that the consent to the adoption was never obtained from the district court for Colfax County, thereby nullifying the adoption proceedings.

Neb. Rev. Stat. § 43-104 (Reissue 1978) provides in part that "[n]o adoption shall be decreed unless the petition . . . is accompanied by written consents . . . executed by . . . any district court . . . having jurisdiction of the custody of a minor child by virtue of divorce proceedings . . . ." The consent of the district court "shall be shown by a duly certified copy of order of the court required to grant such consent." Neb. Rev. Stat. § 43-106 (Reissue 1978).

For some unaccountable reason the original of a January 13, 1981, "Order for Court's Consent to Adoption," captioned "In the District Court for Colfax County, Nebraska," and signed by the district judge, was attached to and filed on January 20, 1981, with the petition for adoption in the county court for Platte County. The substance of the order is in all respects regular and complete, but appellant contends it does not conform to the requirements of law.

There is, as a part of the record, a transcript from the district court for Colfax County, in the dissolution proceedings involving the natural parents, in which is found an "Order for Court's Consent to Adoption," in substance similar to the previously mentioned order, dated January 13, 1981, but which was not filed until June 4, 1982. There is also the following entry on the trial docket, dated June 3, 1982: "Hearing previously had on 13 Jan. 1981 evidence produced showing consent to adoption and written relinquishment executed - order entered on said date - not apparently filed - order nunc pro tunc signed this date." There follow the initials of the same district judge who signed both orders.

The adoptive father cites us to the case of *Kellie v. Lutheran Family & Social Service*, 208 Neb. 767, 305 N.W.2d 874 (1981),

for the proposition that strict compliance with the statutory requirements for adoption is required. In that case the adoption agency had failed completely to execute a written acceptance of the child, as required by statute.

However, in *Hiatt v. Menendez*, 157 Neb. 914, 62 N.W.2d 123 (1954), this court held that the failure of the adoptive parents to sign and have verified their signatures to the petition for adoption was simply an irregularity which did not have the effect of rendering the decree void for want of jurisdiction. The court pointed out that the record did disclose positively the desire of the parents to complete the adoption.

In the cause before us the record also discloses positively that the district court consented to the adoption. Were there any doubts as to that court's intention, its previously declared action was ratified by the order nunc pro tunc entered sometime later, which related back to the January 13, 1981, order. The jurisdictional requirement is that the district court gives its consent. Section 43-106 merely provides the method by which proof of such consent may be unequivocally given.

Such an interpretation is in keeping with the principle that in cases involving the vacation or annulment of adoption decrees, the welfare of the child is the paramount consideration of the court. 2 C.J.S. *Adoption of Persons* § 119 (1972); 2 Am. Jur. 2d *Adoption* § 82 (1962). To judicially eradicate the only father these two children have ever known would definitely not be in furtherance of their welfare.

The judgment of the district court is correct and is affirmed.

AFFIRMED.

WHITE, J., dissenting.

I dissent from that part of the majority opinion which holds that strict compliance with the statutory requirements for adoption is *not* required. In *Kellie v. Lutheran Family & Social Service*, 208 Neb. 767, 771, 305 N.W.2d 874, 876 (1981), this court held that "[i]n this state we have followed the rule that strict compliance with the adoption statutes is required." See, also, *In re Petition of Ritchie*, 155 Neb. 824, 53 N.W.2d 753 (1952).

The majority opinion admits that the statutory requirements were not met. The strict compliance standard was simple and is

easily applied. I would not have substituted that standard for one more flexible.

KRIVOSHA, C.J., joins in this dissent.