CAROLYN HENSMAN, INDIVIDUALLY AND FOR HER MINOR CHILDREN, KASSONDRA LEA HENSMAN AND ALICIA MARIE HENSMAN, APPELLANT, V. PAUL PARSONS AND TAMERA PARSONS, APPELLEES.

458 N.W.2d 199

Filed July 20, 1990.    No. 89-1244.

Audrey S. Ellison for appellant.

Dennis E. Martin for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Carolyn Hensman appeals an order of the district court for Douglas County discharging a writ of habeas corpus under which she sought to have the two children she had relinquished for adoption returned to her. The district court concluded that Hensman had permanently relinquished her parental rights to the children. We affirm.

A decision in a habeas corpus case involving the custody of a child is reviewed by the Supreme Court de novo on the record, *D.S. v. United Catholic Soc. Servs.*, 227 Neb. 654, 419 N.W.2d 531 (1988); *Gaughan v. Gilliam*, 224 Neb. 836, 401 N.W.2d 687 (1987). In a de novo review of a record, where credible evidence is in conflict on a material issue of fact, the Supreme Court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. See *In re Estate of Widger, ante* p. 179, 454 N.W.2d 493 (1990).

On Saturday, June 3, 1989, appellant contacted the appellees, Paul and Tamera Parsons, inquiring whether they were interested in adopting her 6- and 17-month-old daughters. Hensman stated that she needed an answer by the next day, but she agreed to let the Parsonses have the children overnight to help them reach their decision. On Sunday, June 4, 1989, the appellees told Hensman that they wished to adopt the children but wanted to contact an attorney to assure that the adoption would be permanent. Appellant agreed to the Parsonses' condition.

On June 5, 1989, at the office of appellees' attorney,

Hensman executed two separate consents and relinquishments for the adoption of her daughters by the Parsonses. Thereafter, having sold some of her belongings, Hensman left the State of Nebraska, spending some time in Minneapolis, Minnesota, as well as in Des Moines, Iowa. In early July 1989, appellant called the Parsonses and requested the return of the children. The Parsonses refused.

Hensman petitioned the trial court for a writ of habeas corpus, contending that (1) she did not fully understand the significance of the relinquishments, (2) she could revoke the relinquishments because a decree of adoption had not yet been entered, and (3) at the time of the execution of the relinquishments, she was under the effect of antidepressant medication and undergoing great mental anguish due to personal difficulties.

At the hearing on appellant's petition, Parsonses' attorney, who was also their counsel at trial, testified that appellant reviewed the relinquishments and, prior to execution, the attorney questioned Hensman as to whether she understood the contents of the relinquishments and whether she understood that execution of the documents was a permanent relinquishment of her children. The attorney testified that Hensman said she had read the relinquishments, that she understood them and that it was her desire to execute them, and that she understood the serious nature of her actions.

Appellant admitted that she understood she was giving custody of her children to the Parsonses. Hensman contended, however, that no one explained the relinquishments to her. She claimed she only gave temporary custody to the Parsonses and could change her mind. Hensman also asserted that the relinquishments were not entered into voluntarily and knowingly because, at the time of the relinquishments, she was depressed, under a lot of stress, and was taking medication. Hensman conceded that the word "temporary" did not appear in the relinquishments.

After the hearing, the trial court found that the relinquishments were ambiguous because on the one hand, they gave the impression that they were permanent, but on the other hand, they stated that the relinquishments were irrevocable

upon the entry of a decree of adoption. Despite the ambiguity, the trial court concluded from the facts of the case that appellant knew that the relinquishments were taking place and that they were for the purpose of adoption by the Parsonses, that Hensman understood the relinquishments to be absolute and permanent, and that having this knowledge, she knowingly and voluntarily executed the relinquishments. The trial court found that the relinquishments complied with Nebraska statutes. The trial court also found that appellant's ability to understand the events surrounding the execution of the relinquishments was not impaired by medication and that, despite evidence of emotional stress, appellant executed the relinquishments knowingly and voluntarily. The trial court further determined that it was in the best interests of the children to adhere to the terms of the relinquishments.

On appeal, Hensman contends the trial court erred (1) in finding that the relinquishments complied with Neb. Rev. Stat. § 43-106.02 (Reissue 1988); (2) in failing to find that appellant had revoked the relinquishments pursuant to Nebraska law; (3) in finding that appellant knew the relinquishments were absolute and permanent; (4) in finding that appellant knowingly and voluntarily executed the relinquishments; (5) in finding that the relinquishments were valid while also finding that they were ambiguous; (6) in receiving the testimony of appellees' attorney, in violation of DR 5-102 of the Code of Professional Responsibility; (7) in utilizing the best interests standard for terminating appellant's parental rights; and (8) in finding that adherence to the relinquishments was in the best interests of the minor children.

Hensman first claims the trial court erred in concluding that the relinquishments complied with all the statutory requirements for a valid relinquishment. Specifically, appellant contends that the requirements of § 43-106.02 were not met because she was never presented with nonconsent forms. A review of the record reveals that the issue of presentation or nonpresentation of nonconsent forms was not presented to the trial court. An issue not properly presented to and passed upon by the trial court may not be raised on appeal. *Beaver Lake Assn. v. Sorensen*, 231 Neb. 75, 434 N.W.2d 703 (1989).

Appellant's first assignment of error is not properly before this court.

Hensman's second through fourth assignments of error are inextricably related and will be considered together. In sum, appellant argues that the trial court erred in finding that she executed the relinquishments voluntarily and knowingly and that she knew they were absolute and permanent. Hensman also contends that the trial court erred in failing to find that she had revoked the relinquishments.

The burden is on the natural parent challenging the validity of a relinquishment to prove that it was not voluntarily given. *Gaughan v. Gilliam*, 224 Neb. 836, 401 N.W.2d 687 (1987). In the absence of threats, coercion, fraud, or duress, a properly executed relinquishment of parental rights and consent to adoption signed by a natural parent knowingly, intelligently, and voluntarily is valid. *Id.*

Hensman claims that a number of forces impacted upon her decision to sign the relinquishments so as render her acts involuntary and the relinquishments invalid. Appellant argues (1) that she was in an unsettled state of mind and suffering from depression, (2) that she was being treated by a physician for premenstrual syndrome, and (3) that the Parsonses caused the relinquishments to be executed in haste.

Although appellant may have been in a somewhat unsettled state of mind and suffering from depression at the time of the relinquishments, her assertion that her condition rendered the relinquishments invalid is without merit. This court has made it clear that stress alone, whether financial or personal, does not rise to the level of duress that would negate a valid relinquishment. See, *Gaughan v. Gilliam, supra*; *Auman v. Toomey*, 220 Neb. 70, 368 N.W.2d 459 (1985); *Kane v. United Catholic Social Services*, 187 Neb. 467, 191 N.W.2d 824 (1971).

In her petition, Hensman alleged that her reasoning was affected by antidepressant medication. Dr. Ziad Zawaideh, a family practice physician who was treating Hensman, testified that he had prescribed a diuretic for her which simply relieved symptoms connected with premenstrual syndrome. Dr. Zawaideh stated that the purpose of the diuretic was to alleviate the physical discomforts of bloating and water retention. No

other medications had been prescribed for appellant. The doctor, in fact, stated that the diuretic would not affect appellant's thinking processes.

The evidence clearly demonstrates that Hensman comprehended the effects of executing the relinquishments. Witnesses who had been privy to the execution of the relinquishments, including appellant's witness Tammy Haden, testified that prior to the execution of the relinquishments, appellant was asked whether she read the documents, whether she understood the contents thereof, and whether her execution was her voluntary act. Hensman was further advised that execution of the documents was a permanent surrender of her children. Hensman acknowledged that she had read the documents and understood their contents and their permanency, and she stated that she wanted to relinquish her daughters. Hensman also actively participated in the relinquishment process, completing the necessary adoption medical history forms and an authorization for the release of the children's medical information.

Appellant's actions before and after the relinquishments were signed also evidence that she acted voluntarily and knowingly. Hensman initiated the contact with the Parsonses, requesting that they take custody of her children. Appellant had previously considered relinquishing her youngest child to the appellees but reconsidered. She ultimately requested the Parsonses to take two of her children.

Hensman clearly understood the consequences of her actions. She was properly informed and voluntarily and knowingly relinquished her children for adoption.

With regard to the permanency of the relinquishments, Hensman claims that she was only granting temporary custody of her children to the Parsonses and that the Parsonses caused the relinquishments to be executed in haste. Neither of these claims is supported by the evidence. Both the appellant and the Parsonses testified that there were no conversations between them evidencing that the custody was temporary. Hensman placed her children with appellees on June 3, stating that she had to have an answer from the Parsonses by the next day. Appellees advised Hensman that they would only agree to take

custody of the children if it was on a permanent basis. On June 5, appellant executed the relinquishments to assure that the relinquishments were permanent. She sold her furniture and left the state. There was no evidence that Hensman retained any responsibility for the children once she placed them with the Parsonses, and Tamera Parsons testified that no provisions were made by Hensman to care for the children, financially or otherwise.

From a de novo review of the record, we conclude that the relinquishments and consents were voluntarily and knowingly executed by Hensman and that appellant failed to meet her burden of proof to establish the contrary. The evidence also demonstrates that appellant knew the relinquishments were absolute and permanent. That Hensman may have changed her mind at some time after she had relinquished her children is insufficient to invalidate the earlier consent. Having determined that the relinquishments were voluntary, we conclude it is not necessary for this court to consider the question of their attempted revocation. See *Gaughan v. Gilliam*, 224 Neb. 836, 401 N.W.2d 687 (1987).

Appellant next asserts that the trial court's finding that the relinquishments were valid is inconsistent with its finding that they are ambiguous, is contrary to law, and is not sustained by the evidence.

The two relinquishments signed by Hensman were identical except for the names and birth dates of the children. The second paragraph of each document states:

> I therefore acknowledge that should *I hereby relinquish said [children] for adoption that such relinquishment is irrevocable* and that knowing such, I nevertheless hereby consent to the adoption of said minor [children] by [Paul and Tamera Parsons] and I hereby freely and voluntarily, with full knowledge and understanding, relinquish all right to the possession, custody and control from this day forward forever . . . that said [children] shall be adopted to be hereafter forever the [children] of [Paul and Tamera Parsons].

(Emphasis supplied.) The third paragraph of each relinquishment provides:

I further acknowledge that I fully understand the significance of this consent and relinquishment and the fact that it is *irrevocable upon the entry of a decree of adoption* by the County Court of Douglas County, Nebraska . . . .

(Emphasis supplied.) The final paragraph of each relinquishment states:

I therefore hereby execute this relinquishment and consent to adoption of my minor [children] and I do hereby *voluntarily relinquish . . . all right to and custody of and power over and control over my minor [children] that said [Paul and Tamera Parsons] may become the legal parents of said [children]* and I hereby waive the service of any and all notice in any proceedings for adoption.

(Emphasis supplied.)

In *Knox v. Cook*, 233 Neb. 387, 391, 446 N.W.2d 1, 4 (1989), we stated:

Whether a document is ambiguous is a question of law initially determined by a trial court. *Luschen Bldg. Assn. v. Fleming Cos.*, 226 Neb. 840, 415 N.W.2d 453 (1987). "Regarding a question of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review." *Huffman v. Huffman*, 232 Neb. 742, 748, 441 N.W.2d 899, 904 (1989). See, also, *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986).

Ambiguity exists in an instrument when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *In re Estate of Walker*, 224 Neb. 812, 402 N.W.2d 251 (1987). See, also, *National Farmers Union Serv. Corp. v. Edwards*, 220 Neb. 231, 369 N.W.2d 76 (1985) (a document is ambiguous if, after application of the pertinent rules for construction, there is uncertainty concerning which of two or more reasonable meanings represents the intention of the parties).

We conclude, as did the trial court, that the relinquishments are ambiguous in that the documents contain language which reasonably leaves the impression that relinquishment is

permanent and not revocable and also gives the impression that the relinquishment is revocable until a decree of adoption is entered.

However, it is not inconsistent or contrary to law for the trial court to have concluded that the relinquishments were ambiguous and to have also concluded that they were valid. When a document is ambiguous, it is for the trier of fact to determine the intent of the parties from all the facts and circumstances. Such findings will be upheld on appeal unless they are clearly erroneous. See, *Dammann v. Litty*, 234 Neb. 664, 452 N.W.2d 522 (1990); *Lueder Constr. Co. v. Lincoln Electric Sys.*, 228 Neb. 707, 424 N.W.2d 126 (1988). The evidence clearly demonstrates that Hensman understood the relinquishments to be absolute and permanent. The trial court's findings in this regard are not erroneous. This assignment of error is without merit.

Relying on DR 5-102 of the Code of Professional Responsibility, appellant next asserts that the trial court erred in receiving the testimony of the Parsonses' attorney, who was also appellees' counsel at trial. The record clearly reflects, however, that Hensman entered into an agreement to allow the Parsonses' attorney to testify at trial and raised no objection at any time thereafter. Appellant's failure to object to the Parsonses' attorney's testifying at trial precludes appellate review of this issue. See, generally, *Cassio v. Creighton University*, 233 Neb. 160, 446 N.W.2d 704 (1989).

Hensman finally asserts that the trial court's utilization of the best interests standard for terminating her parental rights is contrary to law and not sustained by the evidence. Appellant also contends that the trial court erred in finding that adherence to the relinquishments was in the best interests of the minor children.

Appellant cites numerous cases in support of her proposition that the trial court must find that she was an unfit parent before it can terminate her parental rights. First, none of the cases appellant cites involve the relinquishment of a child by a parent for adoption. Thus, these authorities are inapplicable to this matter. Second, this is not a juvenile court proceeding terminating Hensman's parental rights under Neb. Rev. Stat.

§§ 43-291 et seq. (Reissue 1988), but, rather, it is a consent and relinquishment for adoption pursuant to Neb. Rev. Stat. §§ 43-101 et seq. (Reissue 1988).

Under Nebraska law, the best interests of the child must always be considered in determining matters of child custody. See *Lum v. Mattley*, 208 Neb. 789, 305 N.W.2d 878 (1981) (relinquishment). See, also, *Gaughan v. Gilliam*, 224 Neb. 836, 401 N.W.2d 687 (1987) (relinquishment); *Auman v. Toomey*, 220 Neb. 70, 368 N.W.2d 459 (1985) (relinquishment).

> The rule in Nebraska is that a natural parent "can, by agreement, surrender the custody of his infant children to another, so as to make the custody of that other legal, and he cannot thereafter repudiate such agreement and retain the custody of the children, unless he can show a clear breach of the agreement, or an abuse of the child, or that the best interest of the child requires it." *State v. Nebraska Children's Home Society*, 94 Neb. 255, 263, 143 N.W. 203, 206 (1913).

*Lum v. Mattley, supra* at 791, 305 N.W.2d at 880.

Thus, a natural parent seeking to revoke a valid relinquishment has the burden of showing that the best interests of the child require revocation. *Lum v. Mattley, supra*.

> The rule's focus on the child's best interests recognizes that it is the child who will bear the brunt of the impact of revoking a valid relinquishment, by being uprooted and shifted from home to home. To focus instead upon any "right" of a relinquishing parent to change her mind would ignore the fact that parental rights are no longer an issue after a valid relinquishment and would further abrogate our responsibility to the best interests of the child.

*Id.* at 792, 305 N.W.2d at 880-81.

A careful review of the record fails to demonstrate that it is in the children's best interests that the relinquishments be revoked and the children be returned to appellant. Appellant did not meet her burden of proof in that regard.

The trial court's judgment is affirmed.

AFFIRMED.

CAPORALE, J., concurring.

I write separately, not because I disagree with the result reached by the majority but because it seems to me that the majority has commingled two distinct aspects of the required analysis. This is perhaps best illustrated by the majority's statement that "the record fails to demonstrate that it is in the children's best interests that the relinquishments be revoked and the children be returned to" the mother. I respectfully submit that whether the mother has the right to revoke her relinquishments is a different question from whether, should she have that right, custody of the children must be returned to her. See, *Lum v. Mattley*, 208 Neb. 789, 305 N.W.2d 878 (1981); *State v. Nebraska Children's Home Society*, 94 Neb. 255, 143 N.W. 203 (1913).

As to the relinquishments, the majority correctly observes that whether a document is ambiguous is a question of law. Thus, the trial court's conclusion that the documents are ambiguous is meaningless because as to such a question we, as an appellate court, have an obligation to reach an independent conclusion. *Huffman v. Huffman*, 232 Neb. 742, 441 N.W.2d 899 (1989). In determining that the relinquishments are ambiguous, the majority overlooks that the documents must be read as a whole and, if possible, effect must be given to every part thereof. *Bedrosky v. Hiner*, 230 Neb. 200, 430 N.W.2d 535 (1988); *Lueder Constr. Co. v. Lincoln Electric Sys.*, 228 Neb. 707, 424 N.W.2d 126 (1988). It is clear to me that so read, the relinquishments provide that they become irrevocable only upon the entry of a decree of adoption.

It further seems to me that even if the relinquishments were ambiguous, the majority will have read them incorrectly, for it has ignored the rule that ambiguities are to be construed against the drafter. See *Gard v. Pelican Publishing Co.*, 230 Neb. 656, 433 N.W.2d 175 (1988).

Thus, I would conclude that the mother could, and did, revoke her relinquishments. As indicated earlier, however, such resolution of that issue does not end the analysis because, as the majority correctly notes, in a habeas corpus action involving the custody of a minor, the child's best interests is a factor to be considered. *Lum v. Mattley, supra*. Moreover, the mother, as

the party seeking to change custody, had the burden of affirmatively demonstrating that the best interests of the children require that she regain custody. *Lum v. Mattley, supra*. Little of the record is devoted to that issue, and that little does not sustain the mother's burden in that regard. Thus, I, too, would affirm the judgment of the district court.