KAY YAMADA AND LOIS T. YAMADA, HUSBAND AND WIFE, APPELLANTS, V. GERING NATIONAL BANK & TRUST COMPANY, A CORPORATION, AND FEDERAL DEPOSIT INSURANCE CORPORATION, A CORPORATION, AS RECEIVER FOR GERING NATIONAL BANK & TRUST COMPANY, APPELLEES, AND FEDERAL DEPOSIT INSURANCE CORPORATION, IN ITS CORPORATE CAPACITY, INTERVENOR-APPELLEE.

497 N.W.2d 1

Filed March 12, 1993.   No. S-90-1017.

Richard Scott, of Watkins-Scott-Hoppe, for appellants.

Chip Lowe and Burns H. Davison III, of Adams, Howe & Zoss, P.C., for appellee and intervenor-appellee FDIC.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

LANPHIER, J.

The Yamadas filed a petition in equity to rescind a written agreement between themselves and the defendant Gering National Bank, (hereinafter, the bank). The agreement is essentially a stipulation to allow the bank to foreclose certain real estate and for the bank to lend funds in its discretion for a cattle operation on the foreclosed real estate to be leased back to the plaintiffs' son, Ken. The plaintiffs claim the agreement was breached. Plaintiffs brought the action against the Bank and the FDIC in its corporate capacity as receiver. The bank had been closed by the Comptroller of Currency, and the FDIC intervened as the real party in interest since it was the owner and holder of the subject real estate. The plaintiffs appeal the District Court's finding that there was no breach of the agreement between the plaintiffs and the defendant. We affirm.

## FACTS

On January 26, 1984, during the pendency of mortgage foreclosure proceedings, the plaintiffs entered into a letter agreement with the bank, through its then president Henry J. Rahmig. The plaintiffs agreed not to resist foreclosure and waived their right to file statutory stays. This was in exchange for promises from the bank which included, (1) that the bank would bid up to $250,000 to purchase the property at the Sheriff's sale; (2) if the bid was successful, that the bank would lease the property to the plaintiffs' son, Ken Yamada, for the 1984-1986 growing season; and (3) to finance a 700-head cattle operation during the course of the lease if Ken Yamada's financial statement, "in the bank's opinion" merited financing. The letter agreement was not referenced in the bank's minutes of loan committee meetings nor in Board committee meetings.

The Yamadas complied with the terms of the agreement by waiving statutory stays and allowing foreclosure without delay.

The bank was successful in its bid of $250,000 for the property at the sheriff's sale, and purchased the Yamada premises.

Ken Yamada made large expenditures in preparation for the 700 head of cattle, including growing enough silage to feed the cattle, and erecting new cattle pens. In the fall of 1984 the bank declined to finance the 700 cattle operation. However, during the years of 1984, 1985 and 1986, the bank financed Ken Yamada's operations for as much as $800,000. These operations included the purchase of approximately 900 "cull" cows, which, being inferior cattle, used only a portion of the silage Ken Yamada had.

Ken's parents, as parties to the January 26, 1984 agreement claimed the bank was in breach by not fully financing Ken's cattle operation. On July 31, 1986, the bank was closed and the FDIC was appointed as Receiver of the bank. Through the Receiver, the FDIC in its corporate capacity acquired some of the bank's assets including the Yamada farm. The Yamadas brought this action against the bank and the FDIC as receiver, on January 26, 1988, to rescind the agreement, to set aside the sheriff's deed and to confirm their right to a stay of execution. They filed an amended petition on April 28, 1988.

## STANDARD OF REVIEW

In an appeal of an equity action, this court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where the credible evidence is in conflict on a material issue of fact, we consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Waite v. A.S. Battiato Co.*, 238 Neb. 151, 469 N.W.2d 766 (1991); *Citizens State Bank v. Jennings State Bank*, 236 Neb. 307, 461 N.W.2d 78 (1990).

The appellants contend that the judgment of the trial court was contrary to the evidence. However, they do not address the assignment in their brief. This court will not consider assignments of error which are not discussed in the brief. *Schlup v. Auburn Needleworks, Inc.*, 239 Neb. 854, 479 N.W.2d 440 (1992).

## CLAIM OF BREACH OF AGREEMENT

We find that the Gering National Bank did not breach the agreement in the letter. The bank successfully bid $250,000 for the Yamada Home place, and leased it to Ken Yamada from 1984 to 1986. The Yamada's argue that the bank breached the agreement by not fully financing Ken's cattle operation as stated in the agreement. The agreement gave the bank the discretionary authority to determine whether Ken Yamada's financial statement warranted a loan for the 700-head of cattle, and the amount of funds to be made available to him.

It does not appear from the record that the defendant acted capriciously or arbitrarily. The bank president, Mr. Rahmig, stated that the cattle market was not doing very well at the time, and expressed his concern to Ken Yamada when he initially declined to loan the money for the 700 head of cattle. Regardless, Mr. Rahmig did not refuse all loans to Ken Yamada. The bank financed in excess of $800,000 for Ken's operation between 1984 and 1986.

The plaintiffs, by the record presented on appeal, must affirmatively establish the existence of claimed error. See *Forehead v. Galvin*, 220 Neb. 578, 371 N.W.2d 271 (1985). The plaintiffs have not set forth facts establishing that the court's finding that the contract was not breached, was contrary to the evidence. We agree with the trial court. The defendant bank did not breach the contract.

## FDIC RULE REGARDING "SECRET" AGREEMENTS

Even if the bank had breached the letter agreement, the Yamada's claim would not be valid against the FDIC.

12 U.S.C. § 1823(e) (1988) provides:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the

asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

Plaintiffs claim that the letter agreement was approved by the bank's loan committee. However, they point to no evidence in the record to support this contention. We find none. Defendant correctly points out that the only evidence regarding an agreement between the bank and the plaintiffs is in the loan committee minutes of September 1, 1983 which reflect the following discussion:

Discussed the foreclosure of Kay Yamada and it was agreed that the bank could bid $225,000 on the home place as an inducement to Kay to waive his stay rights . . . Kay wants us to go $250,000 on the home place and there was general agreement that $225,000 was the most desirable, but we might consider the $250,000 level.

The manager of the real estate properties in title to FDIC testified that he did not find any reference to the letter agreement between the bank and Mr. Rahmig in any of the board or loan committee minutes. Furthermore, when asked if there were formal minutes authorizing the agreement with the plaintiffs, Mr. Rahmig, president of the bank and party to the agreement, could not recall any.

In enacting 12 U.S.C. section 1823(e), Congress codified the United States Supreme Court holding known as the *D'Oench* doctrine. In *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S. Ct. 676, 86 L. Ed. 956 (1942), the FDIC, as the successor in interest, brought an action to collect on a borrower's promissory note. The borrower asserted as a defense a purported agreement with the lending bank that he was not obligated to pay. The Supreme Court held that in attempting to defeat the FDIC's claim, the borrower could not rely on "secret" agreements which were outside the documents maintained by the bank. *Id.* at 460-461, 62 S. Ct. at 681, 86 L. Ed. at 963-64. The Court stated:

The test is whether the note was designed to deceive the

creditors or the public authority or would tend to have that effect. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled.

*Id.* at 460, 62 S. Ct. at 680-81, 86 L. Ed. at 963-64.

In *Langley v. FDIC Corp.*, 484 U.S. 86, 108 S. Ct. 396, 98 L. Ed. 2d 340 (1987), an FDIC insured bank financed a land purchase for the defendant. When the defendant defaulted on the loan, the bank initiated an action for the principal and interest. Defendant claimed as a defense that the bank misrepresented the value of the land. No reference to such representations were made in any documents executed by the bank and the defendant. The bank was subsequently closed and the FDIC was appointed as Receiver, and substituted as plaintiff. The Court held that any representations made regarding the value of the land must conform to the requirements of 12 U.S.C. § 1823(e). Since the representations that the defendants alleged did not meet the written requirement, the Court found that they could not be asserted as a defense. "One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets." *Id.* at 91, 108 S. Ct. at 401, 98 L. Ed. 2d at 347. The Court further stated that § 1823(e) is meant to "ensure more than just the FDIC's ability to rely on bank records at the time of examination or acquisition. The statutory requirements that an agreement be approved by the bank's board or loan committee and filed contemporaneously in the bank's records assure prudent consideration of the loan before it is made . . . ." *Id.* at 95, 108 S. Ct. at 403, 98 L. Ed. 2d at 349.

*Langley, supra,* and its progeny have consistently held that an agreement not reflected in loan committee or board minutes, and not part of the bank's records, can not be used to diminish the title or interest of the FDIC. See, *FDIC v. Wright*, 942 F.2d 1089 (7th Cir. 1991), *cert. denied* ____ U.S. ____, 112 S. Ct. 1937, 118 L. Ed. 2d 544 (1992); *Bauman v. Savers Federal Savings & Loan*, 934 F.2d 1506 (11th Cir. 1991), *cert. denied* ____ U.S. ____, 112 S. Ct. 1936, 118 L. Ed. 2d 543 (1992). This rule applies even if there is "fraud in inducement," but may not

if there is "fraud in factum." *Langley, supra* at 92-93, 108 S. Ct. at 401-402, 98 L. Ed. 2d at 346-48. See, also, *In re 604 Columbus Ave. Realty Trust*, 968 F.2d 1332 (1st Cir. 1992). Since there appears to be no appropriate record of the letter agreement entered into by the bank and the plaintiffs, it can not be used to diminish the FDIC's title to the farm house property.

*Howell v. Continental Credit Corp.*, 655 F.2d 743 (7th Cir. 1981), cited by appellants, has no application to this case. In *Howell*, the FDIC attempted to enforce a lease which imposed bilateral obligations on the lessor and the lessee. The plaintiff-lessee asserted as a defense that the lessor bank had not complied with its obligations under the lease. The court held that the FDIC could not invoke the protections of the *D'Oench* doctrine or § 1823 "where the document the FDIC seeks to enforce is one...which facially manifests *bilateral* obligations and serves as the basis of the [promisor's] defense." (Emphasis in original.) *Howell, supra* at 746. Further, in regard to 12 U.S.C. § 1823, the court stated "When...the asset upon which the FDIC is attempting to recover is *the very same agreement* that the makers allege has been breached by the FDIC's assignors, § 1823(e) does not apply." (Emphasis in original.) *Id*. at 747.

This case is distinguishable. The FDIC did not rely on the "secret" agreement to acquire title to the Yamada farm home. An explanation of the dual role of the FDIC may be helpful. The FDIC, as receiver, manages the assets of failed banks. The FDIC in its corporate capacity insures the failed bank's deposits. When an insured bank fails, the FDIC may either liquidate or take a purchase and assumption option. When it elects the purchase and assumption option, as in this case, the FDIC, as Receiver, sells the banks assets to the assuming bank with the promise that the assuming bank will pay the failed bank's depositors. The assuming bank may return "bad" assets of the failed bank to the FDIC as Receiver, who in turn sells these assets to FDIC in its corporate capacity. The proceeds of the sale are paid to the assuming bank to make up the difference between what is paid to the failed bank's depositors and what the assuming bank paid for the good assets. The FDIC in its corporate capacity converts bad assets to cash and then

replenishes the insurance fund. *In re 604 Columbus Ave. Realty Trust, supra.*

The FDIC's title to the Yamada farm house arose from the purchase of it as "bad" asset through the Receiver, not from the letter agreement entered into by the bank and the plaintiffs. The FDIC had no knowledge of the letter agreement until this action was initiated, nor did the FDIC attempt to establish its title to the farm house property through enforcement of the letter. It was the plaintiffs who sought to set aside the sheriff's deed based on the alleged breach of the letter agreement. The exception pronounced in *Howell*, does not support plaintiffs' claims: " 'When the enforcement of a separate collateral or secret agreement would alter the terms of an asset acquired by the FDIC so that the FDIC's right, title, or interest in the asset would be defeated or diminished, § 1823(e) comes into play.' " *Howell, supra* at 747 (quoting *Riverside Park Realty Co. v. FDIC*, 465 F. Supp. 305, 313 (M.D. Tenn. 1978)).

The plaintiffs, by requesting the court set aside the Sheriff's sale, attempted to diminish the interest the FDIC has in the Yamada farm home. As set forth in § 1823(e), the agreement is unenforceable against the FDIC. There was no record of approval of the letter agreement in the loan or board committee minutes.

## REMAINING ASSIGNMENTS OF ERROR

Plaintiffs also assert that the contract lacked consideration and was therefore void and that there was an improper foreclosure on their personal property. These issues were not addressed to the trial court. The issues tried to the trial court were:

1. Was there an agreement between the bank and the plaintiffs to which the FDIC is bound?

2. If there was an agreement, was there a modification of the agreement and what were the terms of the agreement before and after modification?

3. Do the plaintiffs have standing to claim a breach of the agreement?

4. Are the plaintiffs estopped or have they waived their right to ask for a recision of the sheriffs deed after accepting the

benefits of the agreement?

5. Does the FDIC-Corp. have title to the property?

6. Was the property an asset of the bank on the date it was closed by the Comptroller of Currency?

7. If the Sheriff's Deed is rescinded, is the FDIC entitled to have the notes and mortgages of the plaintiff's reinstated?

8. If there was an agreement, was there a breach of the agreement?

There is no indication from the record that the plaintiff raised the issue of consideration or improper foreclosure at the trial court level. This court will not address these issues because an issue not presented to and passed upon by the trial court is not appropriate for consideration on appeal. *K & K Farming Inc. v. Federal Intermediate Credit Bank of Omaha*, 237 Neb 846, 468 N.W.2d 99 (1991); *Hensman v. Parsons*, 235 Neb. 872, 458 N.W.2d 199 (1990).

## CONCLUSION

We affirm the judgment of the trial court.

AFFIRMED.