NATIONAL FARMERS UNION SERVICE CORPORATION, APPELLANT,
v. BRUCE R. EDWARDS, APPELLEE.
369 N.W.2d 76

Filed June 14, 1985.   No. 84-278.

Wagoner and Wagoner, for appellant.

Cunningham, Blackburn, VonSeggern, Livingston, Francis & Riley, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

Plaintiff has appealed the final order of the district court which denied its petition for an injunction and for damages allegedly arising out of the violation by the defendant of a noncompete agreement. We affirm the judgment as modified.

The defendant, Bruce R. Edwards, entered into an employment contract in December of 1980 with the plaintiff, National Farmers Union Service Corporation, to sell insurance. By the terms of that contract Edwards was required to act as an exclusive agent of National Farmers in that he agreed not to "place any insurance of the types offered by INSURERS with any insurance company other than INSURERS without the written consent of the COMPANY." Plaintiff agreed to pay Edwards a salary, along with his commission, on a decreasing basis over a 3-year period.

As a part of the contract, Edwards also agreed as follows:

> 13. AGENT agrees he will not engage in the sale or solicitation of any insurance of the types offered by INSURERS within twenty-five (25) miles of AGENT'S principal place of business for a period of one year from and after the date of voluntary or involuntary termination of this AGREEMENT. . . .

The contract called for Edwards to perform his services in and around St. Paul, Nebraska.

Edwards voluntarily terminated his relationship with the plaintiff effective April of 1982. At that time defendant had received salary and commissions of $16,976.17 in 1981 and $7,592.06 in 1982. There is no question but that Edwards has been soliciting and selling insurance in competition with the plaintiff and in violation of the plain wording of the contract.

It apparently was the trial court's theory in denying relief that the noncompete provisions of the contract were ambiguous, that they were unreasonable and unenforceable if interpreted as urged by plaintiff, and that the parties' bargaining powers were unequal.

The plaintiff for its assignments of error simply states that the court erred in finding that the restraints imposed by the noncompete clause were ambiguous and in misapplying *Dana F. Cole & Co. v. Byerly*, 211 Neb. 903, 320 N.W.2d 916 (1982).

It is necessary that we review this type of case, where an injunction is sought, de novo on the record and reach an independent conclusion without being influenced by the findings of the trial court, absent conflicting credible evidence. *Dana F. Cole & Co. v. Byerly, supra; Sturm v. Mau*, 209 Neb. 865, 312 N.W.2d 272 (1981). There are no evidentiary disputes in the record.

We dispose first of the claimed ambiguity of the language of the contract. In *Meyers v. Frohm Holdings, Inc.*, 211 Neb. 329, 333, 318 N.W.2d 716, 719 (1982), this court stated "there can be no ambiguity . . . unless and until an application of the pertinent rules of interpretation leaves it really uncertain which of two or more possible meanings represents the true intention of the parties."

The language could not be more clear. There is no merit to defendant's contention in that regard. Defendant agreed not to sell or solicit the types of insurance offered by plaintiff for a period of 1 year in an area within 25 miles of St. Paul, Nebraska. Where contract language is plain and unambiguous, the court will not read an ambiguity into it in order to construe it against the one who prepared the contract. *Cillessen Constr. v. Scotts Bluff Co. Hous. Auth.*, 217 Neb. 39, 348 N.W.2d 418 (1984).

Furthermore, we dispose of the claim of unequal bargaining power summarily. Defendant was in the insurance business before he allied himself with National Farmers. The company agreed to give him additional training and to pay him a salary during a 3-year period. In return for that, defendant was required to sign the noncompete agreement. Edwards had the full choice of accepting the employment opportunity with the restriction, or continuing in business as before. There was no inequality of bargaining power.

Finally, we reach the issue of reasonableness of the restriction. In that regard we are guided by the holding of *Philip G. Johnson & Co. v. Salmen*, 211 Neb. 123, 317 N.W.2d 900 (1982). Therein this court stated:

> At the early common law, a contract in restraint of trade was held to be against public policy and void. Over the years we have developed a balancing test and have held

that such restraints, if reasonable, are enforceable. The considerations to be balanced are the degree of inequality in bargaining power; the risk of the covenantee losing customers; the extent of respective participation by the parties in securing and retaining customers; the good faith of the covenantee; the existence of sources or general knowledge pertaining to the identity of customers; the nature and extent of the business position held by the covenantor; the covenantor's training, health, education, and needs of his family; the current conditions of employment; the necessity of the covenantor changing his calling or residence; and the correspondence of the restraint with the need for protecting the legitimate interests of the covenantee. [Citations omitted.]

We have also held that a contract to restrict a laborer from engaging in an occupation, if valid at all, must be restricted to the area in which the personal service was performed.

*Id*. at 128-29, 317 N.W.2d at 903-04. See, also, *Dana F. Cole & Co. v. Byerly, supra.*

The geographical constraint in this contract is the easiest with which to deal. The contract makes clear that the defendant's principal place of business was and is St. Paul, Nebraska. St. Paul was a district area unto itself. There was evidence that at times the St. Paul area would be served by an agent out of Grand Island, but there was no evidence of the reverse situation existing.

It is clear from the record that the 25-miles restriction would include the city of Grand Island. Included within that area were approximately 75,000 to 100,000 people. That is a vast area when compared with the relatively small size of St. Paul itself, the only area shown by the record where the defendant was to conduct his business for the plaintiff. It was incumbent upon the plaintiff to show the reasonableness of the justification of that great a geographical restriction. It has failed to do so.

We therefore reach the conclusion that the noncompete restriction of the contract was overly broad and therefore failed the test of reasonableness. The district court was correct in denying the injunction.

Concerning the issue of damages, the trial court did find "that the Defendant has been unjustly enriched in the amount of $33.00 premium dollars [which] should be returned to the Plaintiff." In order to recover substantial damages flowing from a breach of a covenant not to compete, a plaintiff must furnish sufficient data to enable the trier of fact to estimate the actual damages with a reasonable degree of certainty and exactness, although, failing to do so, if there is evidence of a *specific* monetary loss, recovery of a nominal sum may be had. *Quad-States, Inc. v. Vande Mheen, ante* p. 161, 368 N.W.2d 795 (1985). However, as in *Cole,* there was no evidence adduced at trial which would support the award of nominal damages or the determination of any sum as unjust enrichment. Accordingly, we order the judgment modified by deleting that portion of the award referring to the return of $33.

As modified, the judgment of the district court is affirmed.

AFFIRMED AS MODIFIED.