KENNETH B. KNOX AND MARILYN M. KNOX, APPELLANTS, V. WILLIAM W. COOK, JR., ET AL., APPELLEES.

446 N.W.2d 1

Filed September 22, 1989.   No. 87-868.

John S. Pierce, of Rembolt Ludtke Parker & Berger, for appellants.

James G. Sharp, of Everson, Wullschleger, Sutter, Sharp, Korslund & Willet, for appellees.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Grant, and Fahrnbruch, JJ.

Shanahan, J.

Kenneth B. and Marilyn M. Knox brought an action in the district court for Gage County to recover on a personal guaranty signed by the defendants, David O. Carlson, William W. Cook, Jr., and Walter G. Nickel. The district court, after finding that the provisions of the guaranty were ambiguous, received extrinsic evidence regarding the parties' intent for the guaranty and subsequently determined that the defendants were not liable to Knoxes on the guaranty.

Knoxes appeal and contend that (1) the district court erred in its conclusion that the guaranty was ambiguous, (2) the district court erred in quashing a subpoena served on Carlson and Cook, and (3) the judgment that the defendants were not liable under their guaranty is unsupported by the evidence.

In April 1981, Knoxes entered a written lease with N Double C, Inc. Carlson, Cook, and Nickel were the sole shareholders of N Double C. Pursuant to the lease, Knoxes were required to construct on their real estate a restaurant which N Double C would then lease for a 15-year term. Knoxes wanted Carlson, Cook, and Nickel to give their personal guaranty for the payments required by the lease to N Double C. The lease called for a monthly payment of $5,437.50 as rent due on the first day of each month during the lease and, among its several provisions, contained the following:

> 16. In case of default by lessee [N Double C], David O. Carlson, Walter Nickel, and William W. Cook, Jr., the sole shareholders of N Double C, Inc., will guarantee the monthly payments as heretofore set out until the property herein described is re-leased or up to a term of thirty-six (36) months, whichever is sooner.

Notwithstanding the lease provision for a guaranty, the defendants signed a "Personal Guarantee," which was appended to the Knox-N Double C lease and provides:

> David O. Carlson, Walter Nickel and William W. Cook, Jr. represent that they are the sole owners of all the issued and outstanding stock of the lessee corporation, and that

they personally, jointly, and severally guarantee the faithful and full performance by the lessee of its obligations under this lease, to the following extent.

In the event that the corporation should default under this lease agreement at any time during its term, the guarantors will guarantee the monthly payments set out in the original lease until the property is re-leased or up to a term of thirty-six (36) months, whichever is sooner.

/s/ David O. Carlson
David O. Carlson
/s/ Walter Nickel
Walter Nickel
/s/ William W. Cook, Jr.
William W. Cook, Jr.

Knoxes constructed the restaurant, which N Double C occupied in November 1981. N Double C paid its monthly installments of rent through November of 1985, but failed to pay the rent installment due on December 1, 1985. On January 24, 1986, Knoxes' lawyer sent a letter to the defendants' lawyer, requesting that the defendants pay the then delinquent rent (December 1985 and January 1986). On January 29, 1986, defendants' lawyer responded to Knoxes' demand: "I feel that a fair construction of the guaranty portion of the lease agreement is that it is only in effect for the first thirty-six (36) months from the signing of the lease agreement. That time has expired." N Double C vacated the premises and removed all its equipment sometime between January and May of 1986.

Knoxes attempted to relet the property by listing it with a real estate agency and initially asked $35,000 annual rent, which was reduced to rent of $24,000 per year in June 1986, and again reduced, this time to $22,000 per year in December 1986.

In response to Knoxes' action based on N Double C's default regarding the lease and the defendants' guaranty, Carlson and Cook stated in their answer: "The term of the guarantee under said lease expired three years from the inception of said lease and, therefore, no liability is due from these Defendants to Plaintiffs." Additionally, Carlson and Cook alleged: "Plaintiffs have not made good faith efforts to mitigate the damages of the Defendants and to make reasonable efforts to

lease the property for a commercially reasonable amount and, therefore, are barred from any recovery under the terms of said lease." In his separate pleading, Nickel not only denied liability in a verbatim restatement of the defensive allegations made by Carlson and Cook, but also cross-claimed against Carlson and Cook on account of an alleged indemnity agreement among the defendants to the effect that Carlson and Cook indemnified Nickel "against any claims and demands arising as a result of the" guaranty for the Knox-N Double C lease.

Knoxes obtained service of a subpoena duces tecum on Carlson and Cook, who moved to quash the subpoena. The court sustained the motion by Carlson and Cook and quashed a portion of the subpoena.

Kenneth Knox testified that N Double C had defaulted in the payment of all rent due for the period from December 1, 1985, to April 14, 1987, the date of trial. The defendants offered no evidence to contradict Kenneth Knox's testimony concerning N Double C's default in the payment of rent.

At the conclusion of evidence, the district court found: "Said premises have not been re-leased since [N Double C's] default notwithstanding plaintiffs' efforts so to do; plaintiffs' efforts in such regard have been reasonable and proper in the circumstances." Further, the district court concluded that the guaranty's language "or up to a term of thirty-six (36) months" was ambiguous. In view of such ambiguity, the court allowed the defendants to testify concerning their intention for the guaranty. In substance, the defendants testified that the phrase "or up to a term of thirty-six (36) months" meant that the defendants' guaranty existed only for the first 36 months of the Knox-N Double C lease. Thus, according to the defendants, their guaranty expired in 1984, that is, 3 years after the lease was signed by Knoxes and N Double C. In view of the defendants' testimony, the district court concluded that the guaranty's language "up to a term of thirty-six months" was a reference to the duration of the guaranty's existence for 36 months from commencement of the Knox-N Double C lease and was not a reference to the period or temporal extent of the defendants' liability after N Double C's default on the lease. Consequently, in the judgment entered, the district court stated that "more

than three years having elapsed from the beginning of the lease period before default occurred thereon, defendants are not now obligated to pay plaintiffs any sums under their guarantees." The court then dismissed Knoxes' action.

In their appeal, Knoxes contend that the defendants' guaranty is not ambiguous and request that the district court's judgment be reversed with direction to enter judgment for Knoxes, that is, judgment for $92,437.50 (delinquent rent from December 1985 to and including April 1987, or 17 months) with prejudgment interest. The defendants maintain that their guaranty is ambiguous, and, therefore, the district court's judgment, determining the intent for the guaranty, is correct. The defendants have not cross-appealed to challenge the district court's finding that the Knoxes have exerted reasonable efforts to relet the leased premises previously occupied by N Double C.

Whether a document is ambiguous is a question of law initially determined by a trial court. *Luschen Bldg. Assn. v. Fleming Cos.*, 226 Neb. 840, 415 N.W.2d 453 (1987). "Regarding a question of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review." *Huffman v. Huffman*, 232 Neb. 742, 748, 441 N.W.2d 899, 904 (1989). See, also, *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986).

Ambiguity exists in an instrument when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *In re Estate of Walker*, 224 Neb. 812, 402 N.W.2d 251 (1987). See, also, *National Farmers Union Serv. Corp. v. Edwards*, 220 Neb. 231, 369 N.W.2d 76 (1985) (a document is ambiguous if, after application of the pertinent rules for construction, there is uncertainty concerning which of two or more reasonable meanings represents the intention of the parties). The fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous. *Lueder Constr. Co. v. Lincoln Electric Sys.*, 228 Neb. 707, 424 N.W.2d 126 (1988). If the contents of a document are unambiguous, the document is not subject to interpretation and construction, and

the intention of the parties to the document must be determined from the contents of the document. *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988).

"Nebraska adheres to the rule of strict construction of guaranty contracts. . . . '. . . When the meaning of the contract [guaranty] is ascertained, or its terms are clearly defined, the liability of the guarantor is controlled absolutely by such meaning and limited to the precise terms.' " *Federal Deposit Ins. Corp. v. Heyne*, 227 Neb. 291, 293, 417 N.W.2d 162, 163 (1987) (quoting *Hunter v. Huffman*, 108 Neb. 729, 189 N.W. 166 (1922)).

A guaranty, as any other contract, must be interpreted by reference to the entire document with meaning and effect given to every part of the guaranty whenever possible. *Custom Leasing, Inc. v. Carlson Stapler & Shippers Supply, Inc.*, 195 Neb. 292, 237 N.W.2d 645 (1976).

Applying the foregoing rules of construction or interpretation for a document, we conclude that the guaranty in the present case is unambiguous. The guaranty provides that the defendants will "guarantee" rental payments "[i]n the event that the corporation should default under this lease agreement *at any time during its term*" (emphasis supplied), which term the defendants knew was 15 years. The guaranty's provision limiting the defendants' liability to "a term of thirty-six (36) months" clearly refers to the period of the defendants' liability after N Double C's default on the lease from Knoxes. As the result of the guaranty and on N Double C's default on the Knox lease, the defendants obligated themselves to pay the rent, which accrued but was unpaid, for each of the ensuing 36 months throughout the term of the lease remaining after the default by nonpayment of rent or to pay the rent until the premises were relet, whichever occurred first. The defendants suggest that the guaranty's language "up to a term of thirty-six (36) months" means that the guaranty was effective only for the first 36 months of the Knox-N Double C lease. The construction suggested by the defendants is completely inconsistent with the guaranty's provision for the defendants' liability if N Double C "should default under this lease agreement at any time during its term," that is, default any time

during the 15-year term of the lease from Knoxes. While the defendants point out that the lease provision regarding a guaranty does not include the language "at any time during its term," we cannot ignore that the terms of the defendants' guaranty for performance of the lease, not the terms of the lease, identify and determine the scope of the defendants' personal liability under their guaranty. See *National Bank of Commerce Trust & Sav. Assn. v. Katleman*, 201 Neb. 165, 170, 266 N.W.2d 736, 740 (1978):

> The debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation. The undertaking of the former is independent of the promise of the latter and the responsibilities which are imposed by the contract of guaranty differ from those created by the contract to which the guaranty is collateral.

Therefore, as a matter of law, we conclude that the district court erred in finding that the guaranty was ambiguous. The guaranty obligates the defendants to pay the installments of the monthly rent which N Double C has failed to pay and which Knoxes seek to recover. The district court found that Knoxes have made reasonable efforts to mitigate damages which they have incurred to the date of trial, a finding from which no appeal has been taken. The undisputed evidence establishes that at the date of trial, N Double C had defaulted in the payment of rent for 17 months. With each monthly installment of $5,437.50, the delinquent rent amounted to $92,437.50 at the date of trial. Under the circumstances and as a matter of law, Knoxes are entitled to a judgment against the defendants for the unpaid rent of $92,437.50 prescribed by the Knox-N Double C lease.

As they did at trial and now on appeal, Knoxes ask for prejudgment interest. Neb. Rev. Stat. § 45-103.02 (Reissue 1988) prescribes the conditions for allowance of prejudgment interest on all causes of action accruing on or after January 1, 1987, subject to the exclusions in Neb. Rev. Stat. § 45-103.04 (Reissue 1988), and states:

> [J]udgment interest shall also accrue on decrees and judgments for the payment of money from the date of the plaintiff's first offer of settlement which is exceeded by the

judgment until the rendition of judgment if all of the following conditions are met:

(1) The offer is made in writing upon the defendant by certified mail, return receipt requested, to allow judgment to be taken in accordance with the terms and conditions stated in the offer . . . .

Section 45-103.04 provides:

Judgment interest shall not accrue prior to the date of rendition of judgment for:

(1) Any action arising under Chapter 42; or

(2) Any action involving the state, a political subdivision of the state, or any employee of the state or any of its political subdivisions for any negligent or wrongful act or omission accruing within the scope of such employee's office or employment.

Nothing indicates that Knoxes made a written offer for settlement of their claim against the defendants. However, a cause of action accrued for Knoxes on December 1, 1985, and on the first day of each month thereafter, when N Double C defaulted in the payment of rent due at the specified time. In view of N Double C's default on installment payments of rent due on the first day of each month, a separate cause of action accrued in favor of Knoxes for each month's rent which was not paid by N Double C. Therefore, at the date of January 1, 1987, N Double C was in default for 13 months' rent.

Prejudgment interest is allowed where the amount of the claim is liquidated. When reasonable controversy exists concerning the claimant's right to recover or the amount of such recovery, the claim is unliquidated, and prejudgment interest is not allowed. *Graff v. Burnett*, 226 Neb. 710, 414 N.W.2d 271 (1987); *Fee v. Fee*, 223 Neb. 128, 388 N.W.2d 122 (1986).

*Lutheran Medical Center v. City of Omaha*, 229 Neb. 802, 810, 429 N.W.2d 347, 352 (1988).

We have decided, as a matter of law, that the defendants' guaranty in issue is unambiguous. Consequently, no reasonable controversy existed concerning the provisions of the guaranty inasmuch as the defendants make no challenge to the guaranty beyond the alleged ambiguity. The amount recoverable under

the guaranty is not disputed, that is, 17 months' delinquent rent at $5,437.50 per month. The amount of Knoxes' claim is, therefore, liquidated. The Knox-N Double C lease contains no provision for interest assessable on a delinquent payment of rent. Neb. Rev. Stat. § 45-104 (Reissue 1988) specifies the legal rate of interest as 12 percent per annum. For that reason, Knoxes are entitled to prejudgment interest at the rate of 12 percent per annum in accordance with § 45-104, assessable from the date of delinquency for each unpaid installment of rent due under the Knox-N Double C lease. However, in accordance with § 45-103.02, Knoxes are not entitled to prejudgment interest on rent which accrued on or after January 1, 1987.

On account of our decision regarding the issue of the guaranty involved in this appeal, it is unnecessary to consider Knoxes' other assignments of error.

Therefore, we reverse the judgment of the district court and remand this matter to the district court with direction to enter judgment in the principal amount of $92,437.50 in favor of Knoxes and against the defendants. Further, as a part of the judgment entered on remand, the district court shall allow prejudgment interest to Knoxes in accordance with this opinion. Because the record does not disclose that the cross-claim of Nickel against Carlson and Cook has been disposed of, we remand this matter to the district court for disposition of Nickel's cross-claim against Carlson and Cook.

REVERSED AND REMANDED WITH DIRECTIONS.

WHITE, J., dissenting.

I dissent from that part of the majority opinion that seems to hold that compliance with Neb. Rev. Stat. § 45-103.02 (Reissue 1988) is a prerequisite to the recovery of prejudgment interest in all situations. Rather, I would hold that the section is an addition to those cases where prejudgment interest is allowed pursuant to Neb. Rev. Stat. § 45-104 (Reissue 1988).

The application of the conditions in § 45-103.02, specifically that of a greater recovery than demanded, will result in denial of justified prejudgment interest. If one demands a delinquent payment and subsequently sues and recovers a judgment for the delinquent payment, prejudgment interest must be denied,

since plaintiff's first offer of settlement is "[not] exceeded by the judgment."

The result, I submit, is contrary to the plain intent of the statute, i.e., to encourage settlements, not to offer a boon to deadbeats.

BOSLAUGH and FAHRNBRUCH, JJ., join in this dissent.