INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 571, Appellant,

v.

HAWKINS CONSTRUCTION COMPANY, a Nebraska Corp., Appellee.

INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 571, Appellant,

v.

KIEWIT WESTERN CO., a Nebraska Corp., Appellee.

No. 90–1150.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1990.

Decided April 12, 1991.

M.H. Weinberg, Omaha, Neb., for appellant.

Malcolm D. Young, Omaha, Neb., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HEANEY, Senior Circuit Judge, and LARSON,* District Judge.

HEANEY, Senior Circuit Judge.

The International Union of Operating Engineers, Local No. 571 (Union) brought a Section 301[1] action against two contractors, Hawkins Construction Company (Hawkins) and Kiewit Western Company (Kiewit). The Union claimed that the defendants breached an amendment to a collective bargaining agreement by refusing to honor a twenty-five cent administrative dues checkoff the Union had requested. After a one-day bench trial, the district court entered judgment in favor of the defendants. The Union appeals; we affirm in part and reverse in part.

## BACKGROUND

The Union and a multi-employer bargaining group (Heavy Contractors Association, or HCA), of which Hawkins and Kiewit were members, entered into a two-year collective bargaining agreement on April 1, 1986 (1986–1988 agreement). The 1986–1988 agreement set wage and benefit rates for the Omaha, Nebraska area.

The Union did not submit the 1986–1988 agreement to the Secretary of Labor for his consideration when establishing and publishing the Davis–Bacon rates[2] for operating engineers in the Omaha area. Due to this oversight, the Secretary could not factor in the Union's higher wage rates when calculating the prevailing wage rates in the Omaha area, and the Davis–Bacon rates for the Omaha area were $2.25 per hour lower than the rates established in the 1986–1988 agreement. This disparity allowed nonunion contractors to significantly underbid the HCA contractors for contracts subject to the Davis–Bacon Act. As a result, HCA members lost contracts and Union members lost jobs.

To remedy this problem, the Union and the HCA agreed to try to get the Davis–Ba-

---

* The Honorable Earl R. Larson, United States District Judge for the District of Minnesota, sitting by designation.

1. Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1988).

2. Davis–Bacon rates are the minimum wage rates for mechanics and laborers employed on projects under federal contract where the con-

tract is greater than $2,000. The rates are intended to reflect the prevailing rates for such jobs in a particular locality. *See* 40 U.S.C. § 276a(a) (1988). The Department of Labor sets the Davis–Bacon rates after considering wage rate data submitted by contractors, labor organizations, and others. 29 C.F.R. § 1.3 (1990).

con rates raised $2.25 per hour in time for the November and December 1987 State of Nebraska bid lettings. The Union and the HCA signed an amendment to the 1986–1988 agreement on November 12, 1987, which stated:

1. The Davis–Bacon rates incorporated into the project contract documents for the State of Nebraska Bid Lettings for November, 1987 and December, 1987, for those projects bid within our contract territory, shall apply for the life of the project.

2. Local 571 may adjust the fringes and wages within the predetermined wage package to the extent permitted by law and agreed to by HCA. The adjustment shall not exceed the total dollars set out in the predetermined package.

This amendment allowed the HCA to bid on November and December 1987 bid lettings at the prevailing Davis–Bacon rates even if the HCA and the Union did not succeed in getting the Davis–Bacon rates raised.[3] The HCA contractors no longer had a competitive disadvantage with respect to wage rates, and Hawkins and Kiewit each were awarded two contracts for projects in the November and December 1987 Nebraska bid lettings.

This lawsuit involves those four projects from the November and December 1987 Nebraska bid lettings. The projects were long-term road building and bridge jobs. One of the projects started between January and April 1988, while the other three started in mid-April 1988.

Hawkins resigned from the HCA in late November 1987. Kiewit followed suit a few weeks later. Both Kiewit and Hawkins continued to honor the 1986–1988 agreement until it expired on March 31, 1988. The Union entered into a new agreement with the HCA (now without Hawkins and Kiewit as members) on July 20, 1988; that agreement provided for a twenty-five cent administrative dues checkoff.

The Union could not reach a separate agreement with either Hawkins or Kiewit. When it asked Hawkins and Kiewit to insti-

tute an administrative dues checkoff for the four projects on July 20, 1988, the two contractors refused. The Union sued Hawkins and Kiewit, claiming that the November 12, 1987 amendment required Hawkins and Kiewit to institute an administrative dues checkoff plan for the four projects.

After a bench trial, the district court found for defendants Hawkins and Kiewit. 727 F.Supp. 537. The court reasoned that the amendment permitted the Union to adjust "fringes and wages within the predetermined wage package," but only by decreasing wages and increasing fringes by a corresponding amount of money (or vice-versa). The district court found that the administrative dues checkoff was not permissible under the amendment because it was a twenty-five cent per hour reduction in wages that did not increase fringe benefits by twenty-five cents. This finding rested on an assumption that the checkoff was earmarked entirely for dues or union administrative expenses, neither of which are fringe benefits. Because the district court held that the dues checkoff was not covered under the amendment, it did not find it necessary to decide whether the amendment (1) extended the 1986–1988 agreement for the life of the four projects or (2) otherwise remained in force for the life of the four projects.

## DISCUSSION

■ We review questions of contract interpretation de novo and review the district court's factual findings under the clearly erroneous standard. *See John Morrell & Co. v. Local Union 304A*, 913 F.2d 544, 550–51 (8th Cir.1990), and cases cited therein. Here we face two questions of contract interpretation. First, we must determine whether the amendment applies to projects that were bid for and awarded after the amendment took effect but which were not completed by the expiration date of the 1986–1988 agreement. Second, we must determine whether the amendment permits

---

3. The Union and the HCA were able to get the Davis–Bacon rates raised so that the new Davis-

Bacon rates equaled those in their 1986–1988 agreement.

an administrative dues checkoff as an adjustment of wages and fringe benefits.

■■■ Federal substantive law applies in suits under § 301, but we may look to consistent common law rules of contractual interpretation for guidance as long as their application is consistent with federal labor policies. *See Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957); *United Steelworkers of America v. North Bend Terminal Co.*, 752 F.2d 256, 259 (6th Cir.1985). Thus, when interpreting a contract or collective bargaining agreement, we begin by examining the language of the documents which form the basis of the agreement. *Anderson v. Alpha Portland Indus.*, 836 F.2d 1512, 1517 (8th Cir.1988), *cert. denied* 489 U.S. 1051, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989). The agreement's terms, as in all contracts, "must be construed so as to render none nugatory." *Local 134, UAW v. Yard–Man, Inc.*, 716 F.2d 1476, 1480 (6th Cir.1983), *cert. denied* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984). The general rule is that if the contents of a contract are unambiguous, the intention of parties to the contract must be determined from the contract's contents. *See Press Machinery Corp. v. Smith R.P.M. Corp.*, 727 F.2d 781, 784 (8th Cir.1984); *Knox v. Cook*, 233 Neb. 387, 391–92, 446 N.W.2d 1, 4 (1989); 3 A. Corbin, *Corbin on Contracts* 100–05 (1960) (noting general rule, but arguing that when a court says it will enforce a contract in accordance with the plain and clear meaning of the contract's words, the surrounding circumstances probably will have been proven and carefully weighed).

■■■ Applying these principles, we find that the amendment is in effect for the life of the four projects which were awarded to Hawkins and Kiewit from the November and December 1987 Nebraska bid lettings. When the Union and the HCA signed the November 12, 1987 amendment, they bound the Union and all HCA members, including Hawkins and Kiewit, to its terms. There is no dispute that the amendment applied to the four projects before the 1986–1988 agreement expired; Hawkins and Kiewit acknowledged that they remained bound by the amendment after they left the HCA in late 1987 and until the collective bargaining agreement expired on March 31, 1988. Hawkins and Kiewit claim that the amendment does not bind them now that the 1986–1988 agreement has expired, but the amendment's language does not support their claim. The amendment specifically provides that the Davis–Bacon rates incorporated into the Nebraska bid lettings for November and December 1987 projects apply for the life of the projects, not merely for the life of the contract. In light of the amendment's clear language, which the parties have not changed, we find that the amendment remains in effect for the life of the four projects.[4]

■■■ We now must determine whether the November 12, 1987 amendment gave the Union the right to use an administrative dues checkoff in the four projects with Hawkins and Kiewit. Under the amendment, the Union could "adjust the fringes and wages within the predetermined wage package to the extent permitted by law and agreed to by HCA." There is no dispute that the administrative dues checkoff requested by the Union was lawful, nor that the HCA agreed to a twenty-five cent administrative dues checkoff on July 20, 1988. The only question is whether the proposed twenty-five cent checkoff is an adjustment of "wages and fringes" within the meaning of the November 12, 1987 amendment.

Because the parties negotiated the amendment within the context of the Davis–Bacon Act, we look to the Act for guidance. The Act provides that contractors subject to it must pay, at a minimum, the Davis–Bacon rates, which include the basic hourly rate of pay for each class of laborer or mechanic, plus the costs of vari-

---

4. Extrinsic evidence in the record also supports our conclusion. It is undisputed that when the parties signed the amendment, they knew that the projects referred to in the agreement would last well past the expiration date of the 1986-1988 agreement. In addition, the record reveals that Hawkins and Kiewit have continued to pay the Union members working on the four projects the Davis–Bacon rates referred to in the amendment.

ous fringe benefits for each class. 40 U.S.C. § 276a(b) (1988). The Act lists which benefits are considered fringe benefits. *Id.*

The district court properly looked to the Davis–Bacon Act for guidance when it determined that the administrative dues checkoff was not a wage or fringe benefit under the amendment. A dues checkoff would reduce wages and could be allowed under the amendment only if the checkoff were slated for a fringe benefit.[5] Union administrative dues, however, are not defined as a fringe benefit anywhere within the Davis–Bacon Act. *See* 40 U.S.C. §§ 276a—276a-5 (1988). Dues monies go directly to the Union, and unlike traditional fringe benefits such as insurance, are retained by the Union and are never paid back to employees.

Moreover, although a dues checkoff is a mandatory subject of bargaining, *see Rockingham Machine–Lunex v. N.L.R.B.*, 665 F.2d 303, 305 (8th Cir.1981), *cert. denied* 457 U.S. 1107, 102 S.Ct. 2907, 73 L.Ed.2d 1316 (1982), nothing in the record suggests that the parties ever discussed a dues checkoff when they negotiated the amendment. The compensation package contained in the 1986–1988 agreement included wages and standard fringe benefits, such as employer contributions to the Union's pension and health and welfare trust funds, but did not include an administrative dues checkoff. In fact, an administrative dues checkoff had never been included in any previous collective bargaining agreement between the Union and the HCA.

If the checkoff monies were exclusively allocated for union administrative dues, we would affirm the district court's judgment. The Union claims, however, that five cents

of the checkoff was slated for an apprenticeship program, a well-recognized fringe benefit under the Davis–Bacon Act. *See* 40 U.S.C. § 276a(b) (1988) (listing "defraying costs of apprenticeship or other similar programs" among "bona fide fringe benefits"); 29 C.F.R. § 5.29(a) (1990).

Although the defendants argue that none of the checkoff is slated for an apprenticeship program, the Union's position has some support in the record. *See* Joint Appendix at 84–85 (July 20, 1988 agreement between the HCA and the Union); Joint Appendix at 205. The Union's business manager testified that when the parties negotiated the November 12, 1987 amendment, they discussed a wage deduction for an apprentice program, although witnesses for the defendants disputed this testimony. While apprenticeship programs were not one of the fringe benefits provided in the 1986–1988 collective bargaining agreement, the amendment was negotiated in the context of the Davis–Bacon Act, which treats apprenticeship programs as fringe benefits. The amendment permitted the Union to increase fringe benefits if it decreased wages a corresponding amount. If five cents of the proposed checkoff were to go to an apprenticeship program, the amendment permitted the Union to decrease wages by that amount to pay for the program.[6]

The district court apparently assumed that all of the checkoff went for union dues but did not make such a finding of fact. We remand the case for further fact-finding on this issue. If the district court finds on remand that a portion of the administrative dues checkoff is apportioned for an apprenticeship program, such portion

---

5. As noted above, the district court implicitly found that the amendment permitted the Union to adjust "fringes and wages within the predetermined wage package," but only by decreasing wages and increasing fringes by a corresponding amount of money (or vice-versa). We agree with this analysis, and reject the Union's contention that the amendment allowed it to reduce wages without increasing fringe benefits a corresponding amount.

6. The Union also claimed at oral argument that the remaining twenty cents of the checkoff was

for a targeted jobs program, and that none of the checkoff was for union dues. We do not find anything in the record to support this assertion, and the July 20, 1988 agreement between the Union and the HCA is silent on this point. Moreover, the Union's own witness explained at trial that the twenty-five cent administrative dues checkoff was "a dues checkoff from the contractor off of the employee's wages to help pay for our apprentice program and the administration of our local union." Joint Appendix at 205.

would be a fringe benefit within the meaning of the November 12, 1987 amendment. The Union would be entitled to collect that portion via a checkoff, retroactive to the date the apprenticeship program began and through the life of each of the four projects that are the subject of this lawsuit. We affirm the district court's judgment in all other respects.