RONALD J. ALBEE, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF BOB RAY ALBEE, DECEASED, ET
AL., APPELLEES AND CROSS-APPELLANTS, V. MAVERICK MEDIA,
INC., APPELLANT AND CROSS-APPELLEE.
474 N.W.2d 238

Filed September 6, 1991.   No. 89-321.

Donald R. Witt and Gail S. Perry, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

L.W. Kelly, of Kelly, Kelly & Schroeder, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Ronald J. Albee, personal representative of the estate of Bob Ray Albee, deceased, and the heirs of Bob Ray Albee, all the preceding collectively designated as "Albees," brought a breach of contract action based on a stock purchase agreement against Maverick Media, Inc. After a bench trial, the district court found that Maverick owed Albees $50,000 pursuant to the agreement, but awarded Maverick a setoff of $17,661.39. Maverick appealed, and Albees cross-appealed. We affirm the district court's judgment in part and reverse and modify in part.

## STANDARD OF REVIEW

In a bench trial of a law action, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. . . . In reviewing a judgment awarded in a bench trial of a law action, the Supreme Court does not reweigh evidence but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the

successful party, who is entitled to every reasonable inference deducible from the evidence.

*Oddo v. Speedway Scaffold Co.*, 233 Neb. 1, 2, 443 N.W.2d 596, 598-99 (1989). Accord, *Citizens Fidelity Bank v. Southwest Bank*, 238 Neb. 677, 472 N.W.2d 198 (1991); *Wibbels v. Unick*, 229 Neb. 184, 426 N.W.2d 244 (1988); *Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 390 N.W.2d 487 (1986).

In a bench trial of a law action, the court, as the "trier of fact," is the sole judge of the credibility of witnesses and the weight to be given their testimony. Among the factors entering into the trial court's resolution of any conflicts of evidence are such items as the respective interests of the parties in the litigation; the demeanor of witnesses, including the parties, while testifying before the court; the apparent fairness exhibited by witnesses; the extent to which testimony of various witnesses is corroborated; and the reasonableness or unreasonableness of testimony from the witnesses.

*Lynn v. Metropolitan Utilities Dist.*, 225 Neb. 121, 125, 403 N.W.2d 335, 338 (1987). Accord, *Citizens Fidelity Bank v. Southwest Bank, supra*; *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985).

"Regarding a question of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review." *Huffman v. Huffman*, 232 Neb. 742, 748, 441 N.W.2d 899, 904 (1989). Accord, *Knox v. Cook*, 233 Neb. 387, 446 N.W.2d 1 (1989); *In re Estate of Walker*, 224 Neb. 812, 402 N.W.2d 251 (1987); *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986).

## THE STOCK PURCHASE AGREEMENT

On November 29, 1983, Albees and Maverick entered into a purchase agreement whereby Maverick purchased all shares of common stock in Albee Printing Co., Inc., and its property, including specified accounts receivable, for the purchase price of $150,000. Maverick promised to pay $50,000 at closing on November 29, 1983, with the remaining $100,000 payable in 10

equal and semiannual installments of $10,000, commencing 6 months after closing. The shares of stock were placed in escrow at Five Points Bank pending payments by Maverick.

Under the heading "WARRANTIES AND REPRE-SENTATIONS OF SELLERS," paragraph 4.1 states:

Sellers, individually and collectively, warrant and represent to Buyer as follows:

. . . .

(p) A schedule of all of the accounts receivable of Albee which are collectible in the ordinary course of business with the exceptions noted therein is attached hereto as Schedule 6 and Sellers agree to update any changes in the accounts receivable up to the date of closing.

Paragraph 6.2(a) of the agreement provides: "Sellers' representations and warranties shall be true on and as of the closing date with the same force and effect as if again made thereon." Paragraph 8.3, in relevant parts, provides:

(b) In the event of any breach on the part of Sellers, Buyer may offset any damages relating therefrom with a direct credit against payments due and to become due the Sellers pursuant to this Agreement.

(c) In the event of any litigation with respect to this Agreement the prevailing party shall be entitled to recover, in addition to all other relief to which such party may be entitled, its costs, expenses and attorney fees incurred in connection with said litigation.

(d) Sellers hereby agree to indemnify and hold harmless Buyer and Buyer hereby agrees to indemnify and hold harmless Sellers from and against any and all claims, liabilities, losses and other damages, including all costs, expenses and fees arising out of the breach of any representation, warranty or covenant contained herein by the party against whom indemnification is sought or arising out of the actual failure of Sellers to fully perform, satisfy and pay all of Sellers' obligations and liabilities hereunder. Buyer especially agrees to indemnify and hold harmless the Sellers from any and all claims, liabilities and losses arising out of the Seller's [sic] personal guarantees with respect to the small business loans at five points [sic]

Bank of Grand Island.

. . . .

(f) All of the representations, warranties and covenants made by the parties herein or in any written statements, certificates, schedules or exhibits hereto or any other document delivered by them pursuant hereto in connection with the transactions contemplated hereby shall survive the closing date and shall be binding on the parties notwithstanding any investigations made by them.

## PERFORMANCE OF THE AGREEMENT

By August 22, 1986, Maverick had paid Albees $118,399.47, which included principal of $100,000 and interest on the purchase price. The Albees allowed Maverick a $2,156 setoff against principal and interest due, based on Albees' breach of warranty and failure to transfer title for a 1978 Ford van involved in the sale. The balance of the purchase price was $50,000 on August 22, 1986.

## NOTICE OF SETOFF

In its letter of October 31, 1986, to William Marshall at Five Points Bank, the escrow agent, Maverick stated:

Mr. Marshall:

As escrow agent for Maverick Media, Inc. and the Albee heirs in the sale of Albee Printing Co., Inc. to Maverick Media, Inc., would you please relay the following information to each of the heirs?

As provided in Paragraph 8.3 (b) of the purchase agreement, damages from any breach of the contract by the sellers may be offset by the buyer as a direct credit against payments due to the sellers.

Pursuant to Paragraph 4.1 (p) of the agreement, the sellers provided a schedule of accounts receivable which the sellers warranted to be collectible in the ordinary course of business. Despite all of the best efforts of the buyer, a large amount of the accounts receivable have proved to be uncollectible. We retained law firms to aid us in efforts to collect these accounts, and have been informed that any further legal efforts would be a waste.

I am enclosing a schedule of all accounts that have

proven to be uncollectible. The total is $47,580.03. The total amount due to the heirs, according to the purchase agreement, is $50,000.00. Therefore, on November 29, 1986, the date of the next payment due, Maverick Media, Inc. will issue a check to Five Points Bank, as escrow agent, in the amount of $2,419.97. We do not feel any additional interest is due, since we have already paid considerable interest on the offset amount. Also, you will note that we have not included legal fees and expenses we incurred in our collection efforts.

The buyer's obligations under the agreement will then be fully discharged, and Maverick Media, Inc. will expect to receive from you all remaining shares of stock in Albee Printing Co., Inc., now held by Five Points Bank in escrow.

Upon receipt of the stock certificates, Maverick Media, Inc. will regard the agreement as fully performed by all parties. However, Maverick Media, Inc. reserves the right to assert any rights and claims it may have under the agreement, including additional damages not claimed herein, in the event the stock is not promptly delivered pursuant to the terms hereof or in the event any claim is asserted by the sellers against Maverick Media, Inc.

Marshall informed Albees about Maverick's proposed setoff of $47,580.03, but Albees rejected the claimed setoff. When Maverick tendered $2,419.97 on November 29, 1986, Marshall declined to deliver the remaining common stock held in escrow, but retained the tendered payment of $2,419.97.

Albees then sued Maverick for $50,000. Maverick countered that Albees warranted the accounts receivable to be collectible in the ordinary course of business and that since certain accounts were not collectible, Maverick was entitled to a setoff. Albees responded that there was no warranty concerning collectibility of the accounts and that even if there were such a warranty, Maverick was not allowed a setoff for the uncollected accounts, because Maverick had failed to notify Albees regarding the breach of warranty, that is, noncollectibility of the accounts.

## TRIAL AND DECISION

One of the Albees testified that her understanding of the "warranty" provision in paragraph 4.1(p) of the agreement was simply an "accurate accounting" of the accounts receivable. Often with assistance from some of the Albees, Maverick mailed bills and telephoned those listed in the accounts receivable in efforts to collect payment on the accounts. Also, Maverick hired I.C. Systems, Inc., a collection agency, and employed several law firms to assist in Maverick's efforts to collect the accounts receivable. Maverick paid $1,252.19 for those collection efforts and even resorted to litigation to collect accounts, including the account of Platte Valley Shopper, one of the itemized accounts receivable.

Regarding the Platte Valley Shopper account, Maverick's lawyers sent Platte Valley Shopper a demand letter for $29,918.64 on December 8, 1983. After Platte Valley Shopper failed to pay, Maverick's attorney filed an action to collect the account. Maverick and Platte Valley Shopper later settled the case through a compromise of $2,000 cash paid by Platte Valley Shopper and a transfer of business equipment, valued at $300, to Maverick. Albees were unaware of Maverick's actions or settlement of the Platte Valley Shopper account. According to the list of accounts receivable existing at execution of the Albee-Maverick agreement, there was a total of $47,580.03 due on the accounts receivable, including $29,918.64 on the Platte Valley Shopper account.

The district court concluded that Albees had

> warranted by terms of the contract that all accounts receivable were collectable in the ordinary course of business and that [Maverick] is entitled to a setoff for the accounts receivable which are uncollected and uncollectable in the ordinary course of business with the exceptions hereafter set out.
>
> One of the accounts on which [Maverick] seeks a setoff is identified as Platte Valley Shopper, Scottsbluff, in the sum of $29,918.64, this being the same amount as expressed in Exhibit No. 9 at the time of the execution of the contract. [Maverick] attempted to collect the Platte Valley Shopper account by litigation, and in the course of

litigation compromised the debt for the sum of $2,000 cash (Exhibit No. 29) and equipment valued at $300.00 without notice to [Albees]; that as a matter of law, [Maverick] cannot by this act of compromise without notice place [Albees] in a worse position than they would have been had [Maverick] claimed setoff prior to the compromise. See General Electric v. Lewis, 230 Neb. 429, UCC 9-504(3) (Reissue 1980) . . . .

Hence, the district court found that Maverick owed Albees $50,000 pursuant to the agreement; as a matter of law disallowed $29,918.64 as a setoff for the Platte Valley Shopper account, but awarded Maverick a setoff of $17,661.39, which was the balance of the accounts receivable after the disallowance for the Platte Valley Shopper account; denied both parties' requests for prejudgment interest; and ordered Maverick to pay the costs of the action.

## ASSIGNMENTS OF ERROR

Maverick asserts that the district court erred by denying Maverick a setoff of $29,918.64 for the Platte Valley Shopper account which was settled but uncollectible, by denying Maverick prejudgment interest from the date of the sale, and by denying Maverick a credit for the cost of attempting to collect the accounts receivable.

## DISCUSSION

*Notification Requirements Under the U.C.C.*

For its decision, the district court had to use Neb. U.C.C. § 9-102 (Reissue 1980), which provides:

(1) . . . [T]his article applies (a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, or accounts; and also (b) to any sale of accounts or chattel paper.

(2) This article applies to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease or consignment intended as security,

to reach a conclusion based on Neb. U.C.C. § 9-504(3) (Reissue 1980), which permits a secured party's disposition of collateral after a debtor's default and which provides: "[R]easonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor . . . ."

In the Albee-Maverick sale, accounts receivable were an asset purchased, not security for a debt. Thus, article 9 of the Uniform Commercial Code and, more particularly, the notice requirement of § 9-504(3) do not apply to this case.

As a general rule, a demand for performance is unnecessary for a suit to enforce an agreement unless such demand is required by the terms of the contract or the peculiar nature of the transaction. See *Peckham v. Deans*, 186 Neb. 190, 181 N.W.2d 851 (1970). In *Fink v. Denbeck*, 206 Neb. 462, 465-66, 293 N.W.2d 398, 401 (1980), this court stated:

> The general rule is that a demand for performance is not necessary unless required by the terms of the contract or its peculiar nature. . . . In this case, the warranty was absolute. There was no contractual provision for notice. The law would imply none, for the defendants were not required to perform any act. Liability accrued for damages in accord with the appropriate measure of the case immediately after the warranty was breached by the occurrence of seepage. Even in the case of warranties in connection with the sale of personal property, absent code provisions, failure to give notice does not bar the right to damages.

Since neither Nebraska law nor the Albee-Maverick agreement required notice in the event of a breach of warranty, the district court erred in its decision that, as a matter of law, absence of notice from Maverick precluded a setoff to Maverick on the Platte Valley Shopper account. Consequently, Maverick is entitled to a setoff for the Platte Valley Shopper account. Although Maverick contends that the entire amount of the Platte Valley Shopper account, i.e., $29,918.64, is available as a setoff, undisputed evidence establishes that Maverick, as a result of the settlement of the Platte Valley

Shopper account, received $2,000 in cash and property valued at $300, or a settlement of $2,300 on the account. Albees must receive credit for the $2,300 which Maverick received on the Platte Valley Shopper account, lest Maverick obtain a partial double recovery on the Platte Valley Shopper account. Therefore, when Albees are given credit for the $2,300 received by Maverick on the Platte Valley Shopper account, the balance of that account is $27,618.64 as the correct amount allowable for a setoff attributable to the Platte Valley Shopper account. Hence, Maverick is entitled to a setoff of $27,618.64 for the Platte Valley Shopper account and the additional setoff of $17,661.39, which is the amount allowed by the district court regarding all other accounts receivable, for a total setoff of $45,280.03 concerning noncollectible accounts receivable involved in Albees' warranty.

*Prejudgment Interest.*

Maverick also claims that the district court should have awarded Maverick prejudgment interest on the amount of damages sustained from Albees' breach of warranty on the accounts receivable. We have held:

Neb. Rev. Stat. § 45-103.02 (Reissue 1988) prescribes the conditions for allowance of prejudgment interest on all causes of action accruing on or after January 1, 1987, subject to the exclusions in Neb. Rev. Stat. § 45-103.04 (Reissue 1988), and states: "[J]udgment interest shall also accrue on decrees and judgments for the payment of money from the date of the plaintiff's first offer of settlement which is exceeded by the judgment until the rendition of judgment if all of the following conditions are met:

"(1) The offer is made in writing upon the defendant by certified mail, return receipt requested, to allow judgment to be taken in accordance with the terms and conditions stated in the offer . . . ." Section 45-103.04 provides:

"Judgment interest shall not accrue prior to the date of rendition of judgment for:

"(1) Any action arising under Chapter 42; or

"(2) Any action involving the state, a political

subdivision of the state, or any employee of the state or any of its political subdivisions for any negligent or wrongful act or omission accruing within the scope of such employee's office or employment."

*Knox v. Cook*, 233 Neb. 387, 393-94, 446 N.W.2d 1, 5 (1989).

Any breach of warranty asserted by Maverick occurred before January 1, 1987. Accordingly,

"Prejudgment interest is allowed where the amount of the claim is liquidated. When reasonable controversy exists concerning the claimant's right to recover or the amount of such recovery, the claim is unliquidated, and prejudgment interest is not allowed. *Graff v. Burnett*, 226 Neb. 710, 414 N.W.2d 271 (1987); *Fee v. Fee*, 223 Neb. 128, 388 N.W.2d 122 (1986)." *Lutheran Medical Center v. City of Omaha*, 229 Neb. 802, 810, 429 N.W.2d 347, 352 (1988).

*Knox v. Cook, supra* at 394, 446 N.W.2d at 5.

In the present appeal, collectibility of accounts receivable fluctuated and was even subject to discretionary compromise and settlement as an aspect of collectibility, which was demonstrated in Maverick's disposition of the Platte Valley Shopper account. Thus, the amount due under the agreement varied, depending on collectibility and eventual actual collection, and was, therefore, an uncertain amount. Moreover, the record fails to show that the amount of the uncollectible accounts receivable was ever definitely determined or agreed to by the parties so that the amount became liquidated by specific terms of the agreement. Thus, the district court correctly denied Maverick's request for prejudgment interest.

## Recovery for Cost of Collection.

Maverick claims that it should have received a credit of $1,252.19 for expenses incurred in its attempt to collect the accounts receivable. Pursuant to the contract, Maverick was entitled to be indemnified and held harmless from and against any losses, including all costs, expenses, and fees arising out of the breach of any representation, warranty, or covenant in the agreement. Albees warranted that the accounts receivable were

collectible in the ordinary course of business. Under the contract, Maverick must bear the expense of collection in the "ordinary course of business." Consequently, Maverick may recover only expenses for collection attempts outside the ordinary course of business. The Albee-Maverick agreement has no characterization or definition for "in the ordinary course of business." The general and usual conduct of business for Albee Printing Co. was a printing service in exchange for payment by its customers. Accounts receivable in the ordinary course of business for that printing service were those customer debts payable when due or on the creditor's demand without the necessity of intervention by a third party to obtain payment of the account. Nothing indicated that special efforts would be required for collection of any account at the time of the agreement between Albees and Maverick or that payment of any account was impaired or jeopardized by a debtor's precarious financial condition. Nonetheless, Maverick, even in joint efforts with some of the Albees, directly communicated with debtors for payment on the accounts receivable. The district court concluded that collection through litigation was outside the ordinary course of business. Nothing contradicts that conclusion. Yet, all the collection cost of $1,252.19 was outside the "ordinary course of business" and was, therefore, a loss subject to the indemnification provision in the Albee-Maverick agreement. Thus, Maverick is entitled to expenses of $1,252.19 pertaining to collection of accounts receivable.

## ALBEES' CROSS-APPEAL

Albees contend that the district court erred in finding that paragraph 4.1(p) of the purchase agreement was unambiguous, in awarding Maverick a setoff without any evidence that Maverick attempted to collect the accounts in the "ordinary course of business," and in failing to award Albees prejudgment interest from the date of the sale.

*Ambiguity of Paragraph 4.1(p).*

Albees contend that the "warranty" in paragraph 4.1(p) of the agreement is ambiguous and, therefore, requires interpretation.

Whether a document is ambiguous is a question of law initially determined by a trial court. *Luschen Bldg. Assn. v. Fleming Cos.*, 226 Neb. 840, 415 N.W.2d 453 (1987). "Regarding a question of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review." *Huffman v. Huffman*, 232 Neb. 742, 748, 441 N.W.2d 899, 904 (1989). See, also, *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986).

Ambiguity exists in an instrument when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *In re Estate of Walker*, 224 Neb. 812, 402 N.W.2d 251 (1987). See, also, *National Farmers Union Serv. Corp. v. Edwards*, 220 Neb. 231, 369 N.W.2d 76 (1985) (a document is ambiguous if, after application of the pertinent rules for construction, there is uncertainty concerning which of two or more reasonable meanings represents the intention of the parties). The fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous. *Lueder Constr. Co. v. Lincoln Electric Sys.*, 228 Neb. 707, 424 N.W.2d 126 (1988). If the contents of a document are unambiguous, the document is not subject to interpretation and construction, and the intention of the parties to the document must be determined from the contents of the document. *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988).

*Knox v. Cook*, 233 Neb. 387, 391-92, 446 N.W.2d 1, 4 (1989).

Under paragraph 4.1(p) of the agreement, Albees warranted collectibility of accounts receivable, that is, "accounts receivable of Albee which are collectible in the ordinary course of business with the exceptions noted therein [are] attached hereto as Schedule 6 and Sellers agree to update any changes in the accounts receivable up to the date of closing."

Although one of the Albees testified that, in her belief, paragraph 4.1(p) was only a promise to present Maverick with a list of all accounts receivable and not a warranty that the

accounts were collectible, the express and unambiguous language of the agreement is: "Sellers [Albees] warrant [that] all of the accounts receivable . . . are collectible in the ordinary course of business . . . ." In light of the language in paragraph 4.1(p), the only reasonable interpretation is Albees' warranty that all accounts receivable were collectible in the ordinary course of business except those accounts specifically excluded. Consequently, a court must look solely to the contents of the contract to ascertain the parties' intention and not to a party's understanding or belief regarding the meaning of unambiguous language in a contract. The district court correctly determined that paragraph 4.1(p) was unambiguous.

*Insufficiency of the Evidence.*

Albees next contend that the district court erred in awarding Maverick a setoff in the absence of evidence that Maverick attempted to collect the accounts in the "ordinary course of business." However, often with the help of Albees, Maverick mailed bills and telephoned account debtors in efforts to obtain payment. Also, Maverick hired I.C. Systems, a collection agency, and several law firms to assist in Maverick's collection efforts. In some instances, Maverick even resorted to litigation to collect accounts receivable. Thus, Maverick presented prima facie evidence that Maverick attempted to collect the accounts receivable in the "ordinary course of business." See *State v. Jasper*, 237 Neb. 754, 758, 467 N.W.2d 855, 858 (1991):

"Prima facie evidence" means that proof presented on an issue is sufficient to submit the issue to the fact finder for disposition and precludes a directed verdict against the party with the burden of proof on the issue in a jury trial or exclusion of a particular issue from consideration in a nonjury trial.

See, also, *Bituminous Casualty Corp. v. Deyle*, 234 Neb. 537, 546, 451 N.W.2d 910, 916 (1990): "[A]s the result of prima facie proof on an issue, an adversary has the burden of producing evidence to the contrary or risks an adverse finding on the issue for which there is prima facie proof." Consequently, evidence supports the district court's determination that Maverick attempted to collect accounts receivable in the ordinary course

of business.

*Prejudgment Interest.*

Finally, Albees claim that the district court erred in denying Albees prejudgment interest from the date of the sale. However, after the correct setoff and indemnification for collection cost, that is, $46,532.22, and after credit for Maverick's tender of $2,419.97, or a total of $48,952.19, there remained $1,047.81 on the purchase price under the Albee-Maverick agreement. Nevertheless, since the unpaid balance of the purchase price was uncertain on account of the disputed setoff and indemnified loss, prejudgment interest was inappropriate under the circumstances. For that reason, the district court correctly held that Albees were not entitled to prejudgment interest, because Maverick did not breach any of its contractual obligations imposed by the Albee-Maverick agreement.

## CONCLUSIONS

In summary, Maverick owed $50,000 as the balance of the purchase price specified by the agreement with Albees. However, Maverick was entitled to a setoff based on Albees' breach of warranty on the accounts receivable, a setoff of $45,280.03 as previously indicated in this opinion. In addition to the setoff, Maverick is entitled to recover from Albees $1,252.19, the damages attributable to collection costs from the breach of warranty on the accounts receivable. The combined sum of the corrected setoff and the indemnified loss is $46,532.22 ($45,280.03 plus $1,252.19 equals $46,532.22). Therefore, after allowance for the correct setoff and indemnity, there is due Albees $3,467.78 as the balance of the purchase price under the agreement with Maverick, less credit for the $2,419.97 held by the escrow agent for Albees.

Consequently, we affirm the district court's judgment that Maverick owed Albees $50,000 as the balance of the purchase price specified in the Albee-Maverick agreement, but we reverse the district court's judgment concerning the setoff allowed Maverick and, as a matter of law, conclude that the correct amount of the judgment by setoff for Maverick is $45,280.03 under the Albee-Maverick agreement. We also reverse the district court's judgment that Maverick was not entitled to

recover collection expenses and, as a matter of law, modify the district court's judgment so that Maverick shall have judgment against Albees for $1,252.19, the indemnified damages from the cost of collecting the accounts receivable warranted under the agreement. In all other respects, the district court's judgment is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED AND MODIFIED.